**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **DAYNA RICE**, individually, **LYNDSEE MILLER**, individually, and on behalf of all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>**MORTGAGEPROS, LLC**, a Michigan company,<br><br>Defendant. | Case 2:23-cv-11726-MAG-DRG<br><br>Hon. Mark A. Goldsmith<br>Mag. Judge David R. Grand |

**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE CERTAIN ALLEGATIONS FROM PLAINTIFFS' COMPLAINT**

Defendant MortgagePros, LLC ("MortgagePros") hereby respectfully moves to dismiss the Complaint (ECF No. 1, "Compl.") in the above-captioned matter for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 8 and 12(b)(6). In the alternative, MortgagePros respectfully moves to strike certain improper allegations from the Complaint pursuant to Fed. R. Civ. P. 12(f) and to strike Plaintiffs' faulty class definitions and other class-related allegations under Fed. R. Civ. P. 12(f) and 23. The bases for this Motion are more fully set forth in the attached Memorandum in Support, which is incorporated herein by reference as if fully stated.

Pursuant to Local Rule 7.1, the undersigned certifies that counsel for

MortgagePros made reasonable and timely efforts to confer with counsel for Plaintiffs regarding the bases for this Motion and whether they would concur with the relief sought herein prior to filing same, including emails sent on September 7, 11, and 12, 2023. Despite those efforts, MortgagePros was unable to conduct such a conference.

Dated: September 13, 2023

Respectfully submitted,

By: /s/ A. Paul Heeringa

**MANATT, PHELPS & PHILLIPS, LLP**
John W. McGuinness (CA Bar No. 277322)*
A. Paul Heeringa (IL Bar No. 6288233)*
151 N. Franklin Street, Suite 2600
Chicago, Illinois 60606
(312) 399-9607
Email: jmcguinness@manatt.com
pheeringa@manatt.com

**Howard & Howard**
Nicholas T. Chapie**
450 W 4th St.
Royal Oak, MI 48067
(248) 645-1483
nchapie@howardandhoward.com

***Attorneys for Defendant MortgagePros, LLC***

**Permanently admitted to E.D. Mich. Bar*
*** Local Counsel*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................ 1

RELEVANT ALLEGATIONS ........................................................................ 3

A. Allegations Relevant to Plaintiff Rice ................................................ 3

B. Allegations Relevant to Plaintiff Miller ............................................... 4

APPLICABLE LEGAL STANDARDS ........................................................... 5

ARGUMENT ............................................................................................. 5

I. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) ........................................................................................ 5

A. Plaintiffs Fail to Plead Facts Demonstrating MortgagePros is Liable for Each of the Phone Calls at Issue ........................................ 6

B. Plaintiffs Fail to Provide Fair Notice of Their TCPA Claims Because They Do Not Allege the Phone Numbers At Issue ................ 9

C. Plaintiffs Fail to Adequately Plead Facts Suggesting that They Qualify as "Residential Telephone Subscribers" (Counts I & II) ...... 10

D. Plaintiffs Fail to Adequately Plead Facts Demonstrating a Violation of the TCPA's "Internal" DNC Rules (Count II) ............... 14

II. ALTERNATIVELY, THE COURT SHOULD STRIKE CERTAIN IMPROPER ALLEGATIONS UNDER RULES 12(F) AND 23 ................ 19

A. Paragraphs 17-20 are Immaterial, Impertinent, Scandalous, and Unduly Prejudicial and Should be Stricken Accordingly .................. 19

B. Plaintiffs' Faulty Proposed Class Definitions Should Be Stricken Pursuant to Rule 12(f) and Rule 23 ..................................... 21

CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ....................6, 7

*Amini v. Oberlin Coll.*,
259 F.3d 493 (6th Cir. 2001) ....................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................5

*Auer v. Robbins*,
519 U.S. 452 (1997) ....................17

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
528 F.3d 426 (6th Cir. 2008) ....................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................5

*Benzion v. Vivint, Inc.*,
2014 WL 11531368 (S.D. Fla. Jan. 17, 2014) ....................15

*Black v. SunPath Ltd.*,
2022 WL 4241270 (M.D. Tenn. Sept. 14, 2022), *appeal dismissed,* 2022 WL 18304462 (6th Cir. Dec. 27, 2022) ....................7

*Brownlee v. Allstate Ins. Co.*,
2021 WL 4306160 (N.D. Ill. Sept. 22, 2021) ....................1, 6

*Callier v. Nat'l United Grp., LLC*,
2021 WL 5393829 (W.D. Tex. Nov. 17, 2021) ....................16

*Charvat v. DFS Servs. LLC*,
781 F. Supp. 2d 588 (S.D. Ohio 2011) ....................14, 15

*Charvat v. EchoStar Satellite, LLC*,
630 F.3d 459 (6th Cir. 2010) ....................16

*Charvat v. GVN Michigan, Inc.*,
561 F.3d 623 (6th Cir. 2009) ....................10, 14

*Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ....................17

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Cholly v. Uptain Grp., Inc.*,
2017 WL 449176 (N.D. Ill. Feb. 1, 2017) ....................24, 25

*Conde v. Sensa*,
259 F. Supp. 3d 1064 (S.D. Cal. 2017) ....................20

*Cunningham v. Health Plan Intermediaries Holdings, LLC*,
2021 WL 1946645 (M.D. Tenn. May 14, 2021) ....................1, 7

*Cunningham v. McDonald*,
2018 WL 6737418 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted*,
2018 WL 6198417 (Nov. 28, 2018) ....................11

*Cunningham v. Rapid Capital Funding, LLC/RCF,*
2017 WL 3574451 (M.D. Tenn. July 27, 2017), *report and rec. adopted,*
2017 WL 3776165 (Aug. 31, 2017) ....................11

*Eidson v. Tenn. Dep't of Child. Servs.*,
510 F.3d 631 (6th Cir. 2007) ....................5

*Eldridge v. Cabela's Inc.*,
2017 WL 4364205 (W.D. Ky. Sept. 29, 2017)....................22, 24, 25

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517
(1994)....................20

*Fisher v. Alarm.com Holdings, Inc.*,
2018 WL 5717579 (N.D. Ill. Nov. 1, 2018) ....................21

*Flores v. City of Cal. City*,
2019 WL 1934016 (E.D. Cal. May 1, 2019) ....................25

*Gallegos v. Roman Catholic Archbishop of San Francisco*,
2016 WL 3162203 (N.D. Cal. June 7, 2016)....................20

*Gillam v. Reliance First Capital, LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ....................1, 13

*Glazer v. Reimer L. Co.*,
2019 WL 651599 (N.D. Ohio Feb. 15, 2019)....................22

*Glob. Acquisitions Network v. Bank of Am. Corp.*,
2013 WL 604159 (C.D. Cal. Feb. 19, 2013) ....................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Hicks v. Alarm.com*,
2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ....................................12, 13, 20, 21

*Hirsch v. USHealth Advisors, LLC*,
337 F.R.D. 118 (N.D. Tex. 2020) ....................................................................25

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
934 F. Supp. 2d 1219 (C.D. Cal. 2013) ............................................................20

*In Re Rules & Regs. Implementing the TCPA*,
18 F.C.C. Rcd. 14014 (2003)..........................................................................17

*Jones v. City of Cincinnati*,
521 F.3d 555 (6th Cir. 2008) ............................................................................5

*Keating v. Peterson's Nelnet, LLC*,
615 F.App'x 365 (6th Cir. 2015)......................................................................18

*Kennedy v. Cleveland*,
797 F.2d 297 (6th Cir. 1986) ..........................................................................22

*Laccinole v. Appriss, Inc.*,
453 F. Supp. 3d 499 (D.R.I. 2020) .........................................................14, 16

*Leyse v. Clear Channel Broad., Inc.*,
545 F.App'x 444 (6th Cir. 2013)................................................................17, 18

*Loreto v. Procter & Gamble Co.*,
2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) ................................................22

*Lucas v. Telemarketer Calling from (407) 476-5680*,
2019 WL 3021233 (6th Cir. May 29, 2019)....................................................1, 7

*Maine State Retirement Sys. v. Countrywide Fin. Corp.*,
2011 WL 4389689 (C.D. Cal. May 5, 2011)......................................................20

*Mantha v. QuoteWizard.com, LLC*,
2022 WL 325722 (D. Mass. Feb. 3, 2022)...........................................12, 13, 25

*Mendez v. Optio Sols., LLC*,
219 F. Supp. 3d 1012 (S.D. Cal. 2016) .....................................................2, 9, 10

*Morgan v. U.S. Xpress, Inc.*,
2018 WL 3580775 (W.D. Va. July 25, 2018) ..................................................12

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Orsatti v. Quicken Loans, Inc.*,
2016 WL 7650574 (C.D. Cal. Sept. 12, 2016) ....................18, 19

*Pepka v. Kohl's Dep't Stores, Inc.*,
2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ....................24

*Perrong v. S. Bay Energy Corp.*,
2021 WL 1387506 (E.D. Pa. Apr. 13, 2021) ....................13

*Pilgrim v. Universal Health Card, LLC*,
660 F.3d 943 (6th Cir. 2011) ....................22

*Rahimian v. Adriano*,
2022 WL 798371 (D. Nev. Mar. 16, 2022) ....................15

*RSM Prod. Corp. v. Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009) ....................20

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
863 F.3d 460 (6th Cir. 2017), *as corrected on denial of reh'g en banc*
(Sept. 1, 2017) ....................23

*Sauter v. CVS Pharmacy, Inc.*,
2014 WL 1814076 (S.D. Ohio May 7, 2014) ....................22

*Sherrod v. Enigma Software Grp. USA, LLC*,
2016 WL 25979 (S.D. Ohio Jan. 4, 2016) ....................23

*Smith v. Vision Solar LLC*,
2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ....................12

*St. Francis Health Care Ctr. v. Shalala*,
205 F.3d 937 (6th Cir. 2000) ....................17, 18

*Sterling v. Securus Techs., Inc.*,
2020 WL 2198095 (D. Conn. May 6, 2020) ....................16

*Strand v. Corinthian Colleges, Inc.*,
2014 WL 1515494 (W.D. Mich. Apr. 17, 2014) ....................10

*Tam Travel, Inc. v. Delta Airlines, Inc.*,
583 F.3d 896 (6th Cir. 2009) ....................5

*Trenz v. On-Line Administrators, Inc.*,
2020 WL 5823565 (C.D. Cal. Aug. 10, 2020) ....................23

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*U.S. Diamond & Gold v. Julius Klein Diamonds LLC*,
2007 WL 1026421 (S.D. Ohio Mar. 29, 2007)....19

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)....23

*Wiseberg v. Toyota Motor Corp.*,
2012 WL 1108542 (D.N.J. Mar. 30, 2012), *on reconsideration in part*, 2012 WL 12910267 (D.N.J. Aug. 17, 2012)....21

*Woo v. Home Loan Group, L.P.*,
2007 WL 6624925 (S.D. Cal. Jul. 27, 2007)....20

*Yagman v. Allianz Ins.*,
2015 WL 5553460 (C.D. Cal. May 11, 2015)....22

**STATUTES**

47 U.S.C. § 227(c)....passim

47 U.S.C. § 227(d)....passim

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(c)(2)....6

47 C.F.R. § 64.1200(d)....2, 6, 10, 11

47 C.F.R. § 64.1200(d)(1)....15

47 C.F.R. § 64.1200(d)(3)....16

**RULES**

Fed, R. Civ. P. 8(a)....2

Fed. R. Civ. P. 12(b)(6)....passim

Fed. R. Civ. P. 12(f)....passim

Fed. R. Civ. P. 23....passim

Fed. R. Civ. P. 23(b)(3)....23

Fed. R. Civ. P. 23(c)(1)(A)....22

## **ISSUES PRESENTED**

1. Whether Plaintiffs have adequately pled plausible claims for relief under Fed. R. Civ. P. 8 and/or 12(b)(6). MortgagePros answers: "No."

2. Whether Plaintiffs' facially improper class and other allegations should be stricken under Fed. R Civ. P. 12(f) and/or 23. MortgagePros answers: "Yes."

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

- *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623 (6th Cir. 2009)
- *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010)
- *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011)
- *Keating v. Peterson's Nelnet, LLC*, 615 F.App'x 365 (6th Cir. 2015)
- *Lucas v. Telemarketer*, 2019 WL 3021233 (6th Cir. May 29, 2019)

# INTRODUCTION

Plaintiffs Dayna Rice ("Plaintiff Rice") and Lyndsee Miller ("Plaintiff Miller") allege MortgagePros, LLC ("MortgagePros") violated the "Do-Not-Call" ("DNC") provisions of the Telephone Consumer Protection Act ("TCPA")[1] by "cold-calling" them after they had their credit pulled. However, their Complaint fails to plead any viable TCPA claims, and thus is ripe for dismissal, for at least the following reasons:

**First**, the entire Complaint should be dismissed under Rule 12(b)(6) for the simple threshold reason that, aside from a few bald conclusions which are not entitled to any presumption of truth at the pleadings stage, it lacks plausible facts that would "allow the Court to reasonably infer that defendant is [directly] liable for ***each call***" at issue. *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (emphasis added). *See also Lucas v. Telemarketer Calling from (407) 476-5680*, 2019 WL 3021233, at *5-6 (6th Cir. May 29, 2019) (recognizing that successfully pleading direct liability under the TCPA requires pleading facts demonstrating that the defendant itself, not a third party, physically placed the calls at issue); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2021 WL 1946645, at *2 (M.D. Tenn. May 14, 2021) (dismissing on this basis and applying *Lucas*). In this regard, Plaintiffs at best merely conclude that certain calls originated

[1] Plaintiff Miller seeks relief under the National DNC Registry provisions and the TCPA's "internal" DNC regulations. Plaintiff Rice seeks relief only under the latter.

"from MortgagePros" but otherwise do not connect MortgagePros to each call or number used with sufficient non-conclusory supporting facts, such that the Court could reasonably infer MortgagePros is directly liable for each alleged call.

**Second**, Plaintiffs' Complaint should also be dismissed in its entirety under Rules 8(a) and 12(b)(6) because Plaintiffs do not provide their respective phone numbers (even partially) and, thus, they have not provided MortgagePros with "fair notice" of their TCPA claims as required. *See, e.g., Mendez v. Optio Sols., LLC*, 219 F. Supp. 3d 1012, 1015 (S.D. Cal. 2016) (dismissing TCPA claim on this basis).

**Third**, as to her National DNC Registry claim in Count I of the Complaint, Plaintiff Miller fails to plead sufficient, non-conclusory facts supporting an inference she is a "residential telephone subscriber," as required under Section 227(c)(5) of the TCPA. As to Count II, both Plaintiffs fail to plead sufficient facts suggesting either qualifies as a "residential telephone subscriber," as is also required to state a viable claim under the TCPA's internal DNC regulations in 47 C.F.R. § 64.1200(d). The entire Complaint is subject to dismissal under Rule 12(b)(6) on this additional basis.

**Fourth**, Plaintiffs' "internal" DNC claims (Count II) should also be dismissed under Rule 12(b)(6) for failure to allege plausible facts supporting other essential elements of such a claim. Specifically, Plaintiffs fail to allege sufficient facts suggesting MortgagePros did not maintain internal DNC procedures, as specified by the TCPA's regulations. Indeed, Plaintiffs' allegations regarding MortgagePros'

"internal" DNC procedures are entirely conclusory, speculative, and inadequate as pled, as well as are directly contradicted by other "facts" alleged in their Complaint.

**Lastly**, while the entire Complaint should be dismissed for at least the reasons above, it also interjects various immaterial and impertinent allegations from anonymous posts on third-party websites that have nothing to do with ***this*** case. Plaintiffs' class allegations are also facially inadequate, such that certification cannot be granted as pled. Thus, if the Court does not dismiss the Complaint (and it should), it should strike those clearly improper allegations now under Rules 12(f) and/or 23.

## RELEVANT ALLEGATIONS

### A. Allegations Relevant to Plaintiff Rice

Plaintiff Rice alleges that, on June 16, 2023, she had her credit pulled through her mortgage loan provider. *See* ECF No. 1, ¶ 24, PageID.8. The next day, she purportedly began receiving calls from many mortgage companies, including MortgagePros. *Id.* ¶ 25, PageID.8. Plaintiff Rice allegedly received the first call "from MortgagePros" on June 17, 2023 at 10:21 a.m. on her cell phone number, which she does not provide in the Complaint but claims is used "for personal and household use only." *Id.* ¶¶ 22, 26, PageID.8. Five minutes later, Plaintiff Rice allegedly received a call "from MortgagePros" on a landline phone number, which she also does not provide but asserts is used "for personal and household use only." *Id.* ¶ 27, PageID.8.

Thereafter, Plaintiff Rice alleges she received another call at 10:54 a.m. on her

cell phone, which she apparently did not answer, but contends that she called the number back and "demanded that Defendant MortgagePros should stop calling her cell phone." *Id*. ¶ 30, PageID.9. "Despite her stop request," Plaintiff Rice alleges she received additional calls on June 17, 2023 at 1:38 p.m. and June 19, 2023 at 8:33 a.m. on her cell phone. *Id*. ¶¶ 31-32, PageID.9. On the June 19 call, Plaintiff Rice "spoke to an employee and asked for the calls to stop." *Id*. ¶ 32, PageID.9. She claims she subsequently received calls on June 19, 2023 at 9:42 a.m., 10:08 a.m., 10:20 a.m., and 10:44 a.m. on her cell phone. *Id*. ¶¶ 31-35, PageID.9-10. On June 21, 2023, she allegedly received a second call on her landline number. *Id*. ¶ 36, PageID.10. She does not allege she ever asked not to be called further on her landline, however. *Id*.

**B. Allegations Relevant to Plaintiff Miller**

Per the Complaint, sometime in mid-June 2023, Plaintiff Miller purportedly had her credit pulled by her bank. ECF No. 1, ¶ 46, PageID.11. Plaintiff Miller alleges that, on June 14, 2023, she received a call "from MortgagePros" on her cell phone number, which is also not in the Complaint but which she contends she registered on the National DNC Registry and is for "personal use only." *Id*. ¶¶ 43, 44, 48, PageID. 11-12. Plaintiff Miller allegedly "told th[e] employee to stop calling her cell phone." *Id*. ¶ 50, PageID.12. "Despite the stop request," Plaintiff Miller alleged she received four additional calls on June 14, 2023, three on June 15, 2023, and two calls on June 16, 2023. *Id*. ¶ 51, PageID 12. On the second June 16th call, Plaintiff Miller allegedly

told the "employee" to stop calling her cell phone number. *Id*. ¶ 54, PageID 13.

## APPLICABLE LEGAL STANDARDS

Rule 12(b)(6) mandates dismissal of a complaint that fails to state a claim for relief. To avoid dismissal, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (quotation marks and citation omitted); *see also Twombly*, 550 U.S. at 570 (a plaintiff must allege facts that nudge their claims across the line from merely "conceivable" to "plausible"). While the Court must generally accept well-pleaded factual allegations as true, it need not do so for legal conclusions couched as fact, unwarranted or unreasonable inferences, or unsupported speculation. *See e.g., Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008); *Eidson v. Tenn. Dep't of Child. Servs.,* 510 F.3d 631, 634 (6th Cir. 2007).

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6).

Plaintiffs seek relief under the TCPA's DNC provisions and related

implementing regulations, which together and in pertinent part: (i) prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry (which is pled in Count I as to Plaintiff Miller only); and (ii) require any "person or entity making a call for telemarketing purposes" to "honor a residential subscriber's do-not-call request" made to them within a "reasonable time" and to have internal DNC policies and procedures in place meeting certain minimum standards (which is pled as to both Plaintiffs in Count II). 47 U.S.C. §§ 227(c)(5) & (d); 47 C.F.R. §§ 64.1200(c)(2) & (d); *see also* ECF No. 1, ¶¶ 65-76, PageID.16-20. As shown below, however, Plaintiffs fail to plead sufficient actual facts supporting their claims for several reasons.

### A. Plaintiffs Fail to Plead Facts Demonstrating MortgagePros is Liable for Each of the Phone Calls at Issue.

For starters, to successfully plead any TCPA claim and avoid dismissal under Rule 12(b)(6), Plaintiffs "must allege in [their] [C]omplaint that [MortgagePros] made ***each call*** that she seeks to hold it [directly] liable for." *Brownlee,* 2021 WL 4306160, at *1 (dismissing this basis) (emphasis added). *See also Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (holding that, "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's

allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue"). Moreover, as noted above, direct TCPA liability requires pleading sufficient non-conclusory facts demonstrating that the ***defendant itself***, not a third party, ***physically*** placed the calls at issue. *See, e.g., id.*; *Lucas,* 2019 WL 3021233, at *5-6; *Cunningham*, 2021 WL 1946645, at *2; *see also Black v. SunPath Ltd.,* 2022 WL 4241270, at *3 (M.D. Tenn. Sept. 14, 2022), *appeal dismissed,* 2022 WL 18304462 (6th Cir. Dec. 27, 2022) (discussing the requirements for pleading direct and vicarious TCPA liability). Here, Plaintiffs' Complaint fail to meet even this basic threshold pleading requirement, which alone warrants its complete dismissal.

For example, Plaintiff Rice's direct liability allegations rest squarely on her lone conclusion that "[a]ll of the phone numbers that Plaintiff Rice received calls from can be called back and each number is identified as being owned by MortgagePros." ECF No. 1, ¶ 38, PageID.10. Yet, not only does Plaintiff Rice not allege whether she actually called those numbers back and reached MortgagePros (let alone explain how doing so "identifies" MortgagePros), but also the mere "fact" that a defendant may "***own***" a number does not, standing alone, support an inference that the defendant itself physically placed any calls to Plaintiffs ***using*** that number and, thus, is insufficient to plead direct TCPA liability. *See, e.g., Aaronson*, 2019 WL 8953349, at *2 ("[W]ithout any facts to explain why plaintiff believes the identified phone number is owned by defendant, ... plaintiff has failed to plead facts sufficient to support a

theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that defendant actually, physically initiated the telephone calls at issue.").

Similarly, Plaintiff Miller concludes that "[w]hen all of the aforementioned telephone numbers are called, they are answered by an automated system identifying the company name as MortgagePros." ECF No. 1, ¶ 55, PageID.13. However, she tellingly does not allege how MortgagePros was supposedly "identified," much less whether she actually called those numbers back herself and reached MortgagePros, as opposed to a third party that was simply selling MortgagePros' products (perhaps bundled with other mortgage lenders' products). Moreover, this Court may (and should) take judicial notice of the fact that actually calling those numbers does not "identify" MortgagePros, contrary to what Plaintiff Miller concludes. *See, e.g., Glob. Acquisitions Network v. Bank of Am. Corp.,* 2013 WL 604159, at *8 (C.D. Cal. Feb. 19, 2013) (taking judicial notice of the contents of a website listing a particular phone number, *sua sponte*, where the complaint "'expressly refer[ed] to and necessarily relie[d] on' the phone number as belonging to" the defendant) (citations omitted).[2]

In sum, Plaintiffs do nothing more than allege they received calls "from

[2] "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss ***so long as they are referred to in the Complaint and are central to the claims contained therein***." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001)) (emphasis added).

MortgagePros" but do not plead plausible facts showing MortgagePros physically placed each (or any) call. As such, the Complaint should be dismissed on this basis.

### B. Plaintiffs Fail to Provide Fair Notice of Their TCPA Claims Because They Do Not Allege the Phone Numbers At Issue.

As one federal district court aptly noted when dismissing a previous TCPA case on this basis, "[i]n order for [a defendant] to competently answer the [C]omplaint, it is necessary that it be able to identify those calls which form the basis for its potential liability." *Mendez*, 219 F. Supp. 3d at 1015 (dismissing TCPA claim, stating it was "reasonable" to require the plaintiff to allege a redacted version of her phone number to provide defendant fair notice of her claims). This necessarily requires that MortgagePros have the ability to identify the phone numbers it allegedly called. Such basic facts are particularly critical in a TCPA DNC case like this one, where Plaintiffs' claims rest squarely on whether their numbers are on the National DNC Registry or if they asked to have their numbers placed on a caller's internal DNC list.

Here, Plaintiffs fail to allege even a redacted version of the phone numbers at issue, though these numbers are surely in their possession and could readily be pled. MortgagePros cannot reasonably be expected to search its records and identify all the calls at issue (or any associated consent) for either Plaintiff, absent at least ***some*** information regarding the phone number(s) to which Plaintiffs claim they received the allegedly violative calls. Plaintiffs' failure to plead the phone numbers at issue (even in part) further hampers MortgagePros' ability to validate other allegations made in

the Complaint, such as those concerning registration of a number to the National DNC Registry or receipt of calls after a request not to be called further. Thus, the Complaint should be dismissed in its entirety on this basis alone, as well, as Plaintiffs' failure to provide this basic information in their Complaint does not give MortgagePros "fair notice" of their TCPA claims. *See id*. (finding it was "reasonable to require [the plaintiff] to disclose in her complaint a redacted version of the phone number at issue, such as the phone number's last four digits" to provide the defendant with fair notice of her TCPA claim); *see also Strand v. Corinthian Colleges, Inc.*, 2014 WL 1515494, at *3 (W.D. Mich. Apr. 17, 2014) (ruling similarly and dismissing on this basis).

### C. Plaintiffs Fail to Adequately Plead Facts Suggesting that They Qualify as "Residential Telephone Subscribers" (Counts I & II).

Plaintiffs also fail to plead facts supporting other essential elements of their claims. For starters, the TCPA's DNC provisions and the "internal" DNC regulations, on their face, plainly apply only to "***residential*** telephone subscribers" and not to all phone numbers. 47 U.S.C. § 227(c)(5) (emphasis added); *see also* 47 C.F.R. § 64.1200(d) (stating "[n]o person or entity shall initiate any call for telemarketing purposes to a ***residential telephone subscriber*** unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.") (emphasis added)); *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 629 (6th Cir. 2009) ("[T]he FCC has promulgated [internal] regulations prohibiting telemarketers from placing telephone

calls to ***residential telephone subscribers*** without following certain procedures.") (emphasis added) (citing 47 C.F.R. § 64.1200(d); 47 U.S.C. §§ 227(c)(5) & (f)).

While some cellular telephones or "landline" phones potentially ***can*** satisfy the "residential telephone subscriber" element of Sections 227(c)(5) and 64.1200(d), this is by no means automatic; and mere bald conclusions will not suffice to plead this essential element of a TCPA DNC claim. Rather, it is well settled that, to survive dismissal on this basis, Plaintiffs must allege actual facts establishing that their respective phone numbers are actually used for "residential" purposes. *See*, *e.g.*, *Cunningham v. McDonald*, 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted*, 2018 WL 6198417 (Nov. 28, 2018) (acknowledging that a cell phone may fall within the definition of a "residential telephone subscriber" but denying default judgment based upon alleged violation of 47 C.F.R.§ 64.1200(d) where the plaintiff "allege[d] only that calls were made to his cellular phone").

Consequently, federal courts have often dismissed TCPA DNC claims under Rule 12(b)(6), like Plaintiffs' claims here, where there are insufficient facts pled from which to infer that the subject phone number (*i.e.,* the number on which the alleged violative calls are received) is ***actually used*** for "residential" purposes. *See, e.g., Cunningham v. Rapid Capital Funding, LLC/RCF,* 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017), *report and rec. adopted,* 2017 WL 3776165 (Aug. 31, 2017) ("As Plaintiff has not alleged facts showing his cell phones are used for residential

purposes, he fails to state a claim" under Section 227(c).); *Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (dismissing where plaintiff did not allege the "cell phone line in question is his residential phone, as required"); *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (dismissing § 227(c) claim brought by the same counsel as Plaintiffs' here where the complaint did not allege the subject number was used for "residential" purposes); *Morgan v. U.S. Xpress, Inc.,* 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (holding plaintiff's characterization that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute"). Moreover, courts have also found that whether someone qualifies as a "residential subscriber" for purposes of a DNC claim generally depends on certain conditions, including whether the number upon which the alleged calls were received "is the primary means of reaching the individual at their residence—that is, ***there is no other landline or phone at their residence which is instead the primary means of reaching them***" there. *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022) (emphasis added).

As applied here, Plaintiff Rice alleges that she has both a "cell phone number" and a "landline phone number," both of which she merely concludes are used for "personal and household purposes." ECF No. 1, ¶¶ 22-23, PageID.8. Assuming *arguendo* that her "landline" number is used for "residential" purposes within the meaning of the TCPA to the extent it is installed at her residence—which is not pled

in the Complaint and thus is not conceded here—the only reasonable inference to be drawn from these allegations is that Plaintiff Rice's cell phone number is not her "residential" phone; and, therefore, she cannot bring an internal DNC claim based on alleged calls to that number as a matter of law. And since Plaintiff Rice does not allege that she asked for no further calls to her "landline" number, her internal DNC claim naturally fails. *See, e.g., Perrong v. S. Bay Energy Corp.,* 2021 WL 1387506, at *3 (E.D. Pa. Apr. 13, 2021) (dismissing and ruling plaintiff lacked standing to bring an internal DNC claim because he did not ask for the number at issue to be placed on defendants internal DNC list and "so its non-existence did not cause his injury.").

Plaintiff Miller likewise concludes that her cell phone is "for personal use as one would use a landline telephone number in a home." *Id.* ¶ 44, PageID.11. Yet, both Plaintiffs' bald characterizations of their respective numbers as being "personal" or "household" numbers, without more, are insufficient to plausibly allege "residential" use for purposes of a TCPA DNC claim. *See, e.g., Hicks*, 2020 WL 9261758, at *5 (dismissing where plaintiff alleged his phone was "not associated with a business and is for personal use"); *Gillam v. Reliance First Capital, LLC*, 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023) (ruling similarly and dismissing on this basis). Indeed, neither Plaintiff pleads that any phone number at issue is "***primary*** means of reaching [them] at their ***residence***," much less that "there is no other landline or phone at their residence which is instead the ***primary*** means of reaching them" there. *Mantha,* 2022

WL 325722, at *6 (emphases added). Such simple facts are uniquely in Plaintiffs' knowledge, and could easily be pled if they exist. That they were not pled is telling. Therefore, Plaintiffs have not plausibly alleged they qualify as a "residential telephone subscriber" within the meaning of the TCPA, which further warrants dismissal.

### D. Plaintiffs Fail to Adequately Plead Facts Demonstrating a Violation of the TCPA's "Internal" DNC Rules (Count II).

Also as to Count II of the Complaint, Plaintiffs' threadbare and conclusory allegations regarding MortgagePros' supposed lack of internal DNC procedures likewise do not plausibly allege a violation of the TCPA's internal DNC regulations. *See also Laccinole v. Appriss, Inc.,* 453 F. Supp. 3d 499, 505–06 (D.R.I. 2020) (dismissing where allegations regarding defendants "supposed failure to implement the requisite [internal] procedures [we]re not well-pleaded and must be discarded").

In the Sixth Circuit, "[t]he 'violation of the [internal DNC] regulations' is the initiation of the phone call without having implemented the minimum procedures[.]" *GVN Michigan, Inc.,* 561 F.3d at 632. In other words, the TCPA's internal DNC regulations do not prohibit "actually calling an individual after the individual has requested placement on a do-not-call list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) (citing *GVN Michigan*, 561 F.3d at 632). Thus, the question is whether the caller ***maintained*** such procedures, not merely whether additional calls were allegedly received after a DNC

request. *See id.*; *see also Benzion v. Vivint, Inc.*, 2014 WL 11531368, at *5 (S.D. Fla. Jan. 17, 2014) (dismissing where the complaint simply alleged "that Defendant called Plaintiff back after being asked not to ever call again" and "d[id] not allege that Defendant made either call while not having the proper procedures in place.").

Here, Plaintiffs' scant allegations regarding MortgagePros' supposed lack of internal DNC procedures are entirely conclusory and speculative and merely parrot the statutory text. *See, e.g.*, ECF No. 1, ¶¶ 21, 74, PageID.8 & 20. Indeed, Plaintiffs do <u>not</u> allege, for example, that they requested a copy of MortgagePros' internal DNC policy (which they could have done, per the statute, *see* 47 C.F.R. § 64.1200(d)(1)) and that MortgagePros failed to produce such a policy upon request—which is not a violation of the internal DNC rules by itself but might have given Plaintiffs a minimal factual basis to allege whether MortgagePros had internal procedures in place before they were called. *See also Rahimian v. Adriano*, 2022 WL 798371, at *3 (D. Nev. Mar. 16, 2022) (dismissing where plaintiff did not request copy of defendants' internal DNC policy and otherwise did not allege further facts to reasonably infer a violation).

Further, as noted above, courts have recognized that merely alleging receipt of calls after a purported DNC request is likewise inadequate to plausibly allege an internal DNC violation, without more. *See, e.g., DFS Servs. LLC*, 781 F. Supp. 2d at 592; *Benzion,* 2014 WL 11531368, at *5; *Rahimian*, 2022 WL 798371, at *3. In this case, Plaintiffs do not allege, for example, that MortgagePros' internal systems were

capable of processing DNC requests any sooner than three days after such a request (as allegedly occurred here) but that MortgagePros failed to train its employees to properly record these requests, or any other plausible facts suggesting MortgagePros did not have procedures in place at all when they were allegedly called just three days after their stop requests. In sum, there are ***no facts whatsoever*** from which the Court could infer that MortgagePros did not have internal DNC procedures in place at the time of the alleged calls, which is what is required to state such a claim under binding Sixth Circuit authority. Therefore, Count II should be dismissed in its entirety on this basis, as well. *See, e.g.*, *Laccinole*, 453 F. Supp. 3d at 505; *see also Sterling v. Securus Techs., Inc.,* 2020 WL 2198095, at *6 (D. Conn. May 6, 2020) (dismissing amended complaint asserting internal DNC claim where plaintiff "provided no additional allegations regarding the maintenance or procedures for a do-not-call list"); *Callier v. Nat'l United Grp., LLC,* 2021 WL 5393829, at *7 & 9-10 (W.D. Tex. Nov. 17, 2021) (dismissing where plaintiff "fail[ed] to provide any factual support for his conclusory allegations that [defendant] does not meet the minimum standards" of the regulations).

Beyond their complete lack of factual support, Plaintiffs' internal DNC claims in Count II also fail as a matter of law. The Sixth Circuit has noted that "the FCC has interpretive authority over the [TCPA] … and its accompanying regulations" including the specific provisions that Plaintiffs invokes for their claim here: 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(3). *Charvat v. EchoStar Satellite, LLC*, 630

F.3d 459, 466 (6th Cir. 2010) (citing *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44, (1984) and *Auer v. Robbins*, 519 U.S. 452, 461 (1997)) (internal citations and punctuation omitted). Moreover, it is well settled in this Circuit and elsewhere that "[c]ourts are to give substantial deference to an agency's interpretation of its own regulations." *St. Francis Health Care Ctr. v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000) (internal quotation marks omitted). Consequently, this Court must give deference to FCC declaratory rulings interpreting the TCPA's implementing regulations when deciding whether Plaintiffs have stated a plausible claim for relief under the TCPA's internal DNC provisions in this case. *See, e.g., Leyse v. Clear Channel Broad., Inc.*, 545 F.App'x 444, 453 (6th Cir. 2013) (applying *Chevron* and giving deference to FCC declaratory ruling in affirming dismissal under Rule 12(b)(6)). Applying such deference further dooms Plaintiffs' claims.

Indeed, the FCC has correctly recognized that "some administrative time may be necessary to process [internal DNC] requests." *In Re Rules & Regs. Implementing the TCPA,* 18 F.C.C. Rcd. 14014, 14069 (2003). Along those lines, while the TCPA's internal DNC regulations simply require businesses to "honor a residential subscriber's [DNC] request" within a "reasonable time" and not exceeding 30 days, the FCC has interpreted this rule to require businesses to honor DNC requests at least "within a ***few days or weeks***" as opposed to immediately. *Id.* ¶ 94 (emphasis added).

Here, Plaintiffs allege that they received phone calls over a span of ***three days***.

*See, e.g.,* ECF No. 1 ¶¶ 25-35, PageID.8-9 (alleging Plaintiff Rice received calls on her cell phone between June 17-19, 2023); *id.* ¶¶ 48, 51, 52, PageID.12 (alleging Plaintiff Miller received calls on her cell phone between June 14-16, 2023). These additional calls occurred well within the 30-day "reasonable" time frame expressly permitted under the TCPA's internal DNC regulations, and certainly within (and in fact less than) "a few days or weeks" of their alleged DNC requests, which the FCC has interpreted as a "reasonable" time frame.[3] The Court must give substantial deference to the FCC's interpretation of the TCPA's regulations when ruling here and, in particular, what constitutes a "reasonable time" to honor an internal DNC request. *See, e.g., Keating v. Peterson's Nelnet, LLC*, 615 F.App'x 365, 370 (6th Cir. 2015) ("[W]e must defer to the reasonable interpretation of the [TCPA] offered by the FCC in its 2003 guidance."); *see also Leyse*, 545 F.App'x at 453; *Shalala*, 205 F.3d at 943. Under the FCC's interpretive authority cited above, MortgagePros complied with the internal DNC regulations; thus, Plaintiffs' internal DNC claims fail as a matter of law.

Moreover, Plaintiffs also do not claim to have received any further calls from MortgagePros since the date of the last alleged call in the Complaint (June 21, 2023). As such, the only plausible inference to be drawn here is that ***MortgagePros had***

[3] Plaintiffs may argue that whether their DNC requests were timely honored cannot be decided at the pleadings stage, but courts have done so. *See Orsatti v. Quicken Loans, Inc.*, 2016 WL 7650574, at *7 (C.D. Cal. Sept. 12, 2016) (holding short delay in honoring internal DNC request, which was honored within the 30-day time maximum frame afforded, was reasonable and dismissing under Rule 12(b)(6)).

***indeed implemented internal procedures prior to initiating the alleged violative calls, and honored Plaintiffs' DNC request within a reasonable time***, in accordance with the internal DNC regulations as interpreted by the FCC and applicable law. And in any event, while Plaintiff Rice also alleges additional calls to her landline phone number on June 21, 2023 after she purportedly asked for calls to her cell phone to cease, she does not allege she ever made a DNC request from or in relation to her landline number; thus, these allegations do not support her internal DNC claim either. Therefore, Count II should be dismissed under Rule 12(b)(6) on this basis, as well. *See also Orsatti*, 2016 WL 7650574, at *7 (granting Rule 12(b)(6) motion to dismiss where only other alleged call was within 30-day safe harbor under the statute).

## II. ALTERNATIVELY, THE COURT SHOULD STRIKE CERTAIN IMPROPER ALLEGATIONS UNDER RULES 12(F) AND 23.

Should the Court decide not to dismiss in whole or in part, it should nevertheless strike certain plainly defective allegations under Rules 12(f) and/or 23.

### A. Paragraphs 17-20 are Immaterial, Impertinent, Scandalous, and Unduly Prejudicial and Should be Stricken Accordingly.

Under Rule 12(f), this Court "may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." "Immaterial" matter "ha[s] no essential or important relationship to the claim," whereas "impertinent" matter consists of statements that "do not pertain, and are not necessary, to the issues in question." *U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, 2007 WL 1026421,

at *11 (S.D. Ohio Mar. 29, 2007). Here, Plaintiffs' Complaint contains immaterial, impertinent and scandalous allegations relating to online claims by unidentified parties having nothing to do with this case. *See* ECF No. 1, ¶¶ 17-20, PageID.5-8 (and footnote thereto). Those improper and immaterial allegations should be stricken.

Federal courts, in the TCPA context and others, have recognized that "'[s]uperfluous historical allegations are a proper subject of a [Rule 12(f)] motion to strike.'" *Hicks,* 2020 WL 9261758, at *5 (quoting *Woo v. Home Loan Group, L.P.*, 2007 WL 6624925, at *5 (S.D. Cal. Jul. 27, 2007) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994))); *see also Gallegos v. Roman Catholic Archbishop of San Francisco*, 2016 WL 3162203, at *5 (N.D. Cal. June 7, 2016) (striking irrelevant allegations "involving a different plaintiff, and different underlying events"). The same is true for allegations about complaints filed in other cases or, as particularly relevant here, online "complaints" posted anonymously by third parties. *See, e.g., Hicks,* 2020 WL 9261758, at *5-6 (striking similar internet allegations in a case brought by the same counsel representing Plaintiffs here under Rule 12(f)); *see also In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013) (citing *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009)); *Maine State Retirement Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *20-21 (C.D. Cal. May 5, 2011); *Conde v. Sensa*, 259 F. Supp. 3d 1064, 1071 (S.D. Cal. 2017);

*Wiseberg v. Toyota Motor Corp.*, 2012 WL 1108542, at *12-13 (D.N.J. Mar. 30, 2012), *on reconsideration in part*, 2012 WL 12910267 (Aug. 17, 2012)).

In this case, paragraphs 17 through 20 of the Complaint contain numerous improper allegations that should be stricken in their entirety under Rule 12(f). These allegations refer to anonymous posts on third party websites that Plaintiffs suggest are reflective of "cold calls" to consumers and "complaints" regarding "unsolicited" calls from MortgagePros. Yet, nothing in those "complaints" suggests MortgagePros is liable for the purported calls at issue ***here***. *See Hicks,* 2020 WL 9261758, at *6 (noting that such allegations "offer attenuated information that does little to support Plaintiff's claims"); *see also Fisher v. Alarm.com Holdings, Inc.*, 2018 WL 5717579, at *3 (N.D. Ill. Nov. 1, 2018) (stating that allegations involving defendant's alleged conduct in an unrelated case did nothing to support an inference that defendant was vicariously liable in the case at bar). Thus, Plaintiffs' vague and unsubstantiated internet complaints regarding "cold calls" or "unsolicited" telemarketing calls to others are irrelevant, immaterial, have no bearing on ***Plaintiffs*** or ***this*** case, and only serve to unduly prejudice MortgagePros. *Id*. Thus, the Court should strike these immaterial, impertinent, superfluous, and prejudicial "historical allegations" under Rule 12(f).

### B. <u>Plaintiffs' Faulty Proposed Class Definitions Should Be Stricken Pursuant to Rule 12(f) and Rule 23.</u>

The Court should also strike Plaintiffs' faulty proposed class definitions (*see* ECF No. 1, ¶ 59, PageID.13-14) and other class-related allegations under Rules 12(f)

and 23 because common questions of law and fact do not predominate.

In this Circuit, class allegations may be properly stricken at the pleadings stage prior to discovery pursuant to Rule 12(f) where, as here, "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met" under Rule 23. *Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (quoting *Loreto v. Procter & Gamble Co.*, 2013 WL 6055401, at *2 (S.D. Ohio Nov. 15, 2013)); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming judgment striking class allegations and dismissing complaint where discovery would not alter the central defect in the class claim); *Eldridge v. Cabela's Inc.*, 2017 WL 4364205, at *10 (W.D. Ky. Sept. 29, 2017) (striking class definition in TCPA case at the pleadings stage).

Moreover, it is also well established that Rule 12(f) motions such as this one serve to "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Glazer v. Reimer L. Co.*, 2019 WL 651599, at *2 (N.D. Ohio Feb. 15, 2019) (quoting *Kennedy v. Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)). "Rule 23(c)(1)(A) says that the district court should decide whether to certify a class "[a]t an early practicable time." *Pilgrim*, 660 F.3d at 949. Thus, federal courts have widely recognized that permitting a facially uncertifiable class to proceed to discovery would place an undue burden and expense upon the parties and the court. *See, e.g., Yagman v. Allianz Ins.*, 2015 WL 5553460,

at *4 (C.D. Cal. May 11, 2015) (striking class allegations where allowing untenable class claims to proceed past the pleadings stage "would inject significant uncertainty as to the scope of discovery and other pre-trial proceedings") (citation omitted).

Here, the allegations in the Complaint show Plaintiffs cannot meet the certification requirement under Rule 23(b)(3), which requires that "questions of law or fact common to class members must predominate over any questions affecting only individual members[.]" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017), *as corrected* (Sept. 1, 2017). "A common issue of fact or law does not exist unless 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Sherrod v. Enigma Software Grp. USA, LLC*, 2016 WL 25979, at *6 (S.D. Ohio Jan. 4, 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

Along these lines, courts have consistently denied class certification (particularly in internal DNC list/revocation cases) where, as here, individualized consent inquiries predominate. *See, e.g., Sandusky*, 863 F.3d at 469 (affirming denial of class certification where putative class included current customers who provided their fax numbers and identifying who had given the requisite consent would require individualized inquiries); *see also Trenz v. On-Line Administrators, Inc.*, 2020 WL 5823565, at *8 (C.D. Cal. Aug. 10, 2020) (decertifying TCPA class and noting "[t]he necessity of individual inquiries is a ***clear bar*** to class certification in TCPA matters")

(citing various cases, emphasis added)). Courts have also routinely stricken class allegations at the pleadings stage for this reason. *See, e.g.*, *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016); *Eldridge*, 2017 WL 4364205, at *7-11; *Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017). This Court should reach the same conclusion in the present case.

In this case, it is apparent from the face of the Complaint that common questions of law and fact do not predominate and that individualized inquiries would be required. In this regard, Plaintiffs seeks to represent two classes of persons for whom MortgagePros purportedly called on their "residential" numbers "for substantially the same reason Defendant called Plaintiffs" including "including at least once after the consumer had communicated their wish to not receive any further calls from the Defendant." ECF No. 1, ¶ 59, PageID.13-14. However, the "reason" MortgagePros allegedly made calls and whether MortgagePros continued to place telemarketing calls after a request to stop calling cannot be determined on a class wide basis, as individualized issues will inevitably predominate. *See, e.g., Eldridge*, 2017 WL 4364205, at *9 (stating that the caselaw "favors striking" revocation classes in TCPA cases) (collecting cases)). Indeed, though someone who consented can later "request" that the caller "stop calling"—*i.e.*, ***revoke*** consent—under the TCPA, they "***cannot use ambiguous statements***" and "must ***clearly*** revoke consent." *Barnett*, 2021 WL 2187950, at *5 (citing various cases, emphasis added). Thus, the critical

legal and factual issues of consent and revocation of consent are inextricably intertwined with Plaintiffs' proposed class definitions as pled, and individualized determinations on those critical issues would undoubtedly be needed, at the minimum.

Individualized inquires will also be required to determine whether each class member utilized their phone number for "residential" purposes. *See Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 135 (N.D. Tex. 2020) (questions such as residential status "require 'evidence that varies from member to member'"); *see also Mantha*, 2022 WL 325722, at *6. Thus, courts often deny class certification and/or strike class allegations in TCPA cases on predominance grounds where individualized determinations of "revocation" or "residential" status would be required. *See, e.g., Eldridge, Cholly*, and *Hirsch*, *supra*. Such is true in this case. Therefore, Plaintiffs' proposed class definitions should also be stricken on predominance grounds.[4]

## CONCLUSION

For all these reasons, the Complaint should be dismissed and/or stricken.

Dated: September 13, 2023

Respectfully submitted,

By: /s/ A. Paul Heeringa

**MANATT, PHELPS & PHILLIPS, LLP**

*Counsel for Defendant*

[4] Since Plaintiffs' faulty class definitions are properly stricken, all remaining "class" related allegations in the Complaint (*see, e.g.,* ECF No. 1, ¶¶ 60-64) would be superfluous and, therefore, are properly stricken as well. *See, e.g., Flores v. City of Cal. City*, 2019 WL 1934016, at *6 (E.D. Cal. May 1, 2019) (striking "any reference to a class, Rule 23, or a class action" after dismissal of class claims).

## CERTIFICATE OF SERVICE

I hereby certify that, on September 13, 2023, I filed the foregoing electronically through the Court's CM/ECF system, which caused the following parties or counsel to be served by electronic means on all parties and their respective counsel of record.

*s/ A. Paul Heeringa*

A. Paul Heeringa