UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

**DAYNA RICE**, individually, **LYNDSEE MILLER,** individually, and on behalf of all others similarly situated,

*Plaintiffs*,

*v.*

**MORTGAGEPROS, LLC**, a Michigan company,

*Defendant.*

No. 2:23-cv-11726-MAG-DRG

**FIRST AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Dayna Rice ("Plaintiff Rice" or "Rice") and Plaintiff Lyndsee Miller ("Plaintiff Miller" or "Miller") bring this Class Action Complaint and Demand for Jury Trial against Defendant MortgagePros LLC ("Defendant MortgagePros" or "MortgagePros") to stop the Defendant from violating the Telephone Consumer Protection Act by making telemarketing calls to phone numbers registered on the National Do Not Call registry ("DNC"), including after the consumer specifically opted out of receiving any more phone communications from the Defendant. The Plaintiffs also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Rice and Plaintiff Miller, for this Complaint, allege

as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

1. Plaintiff Dayna Rice is a resident of Sylvania, Georgia.

2. Plaintiff Lyndsee Miller is a resident of Evansville, Indiana.

3. Defendant MortgagePros is a Michigan company with its principal place of business in Troy, Michigan. Defendant MortgagePros Defendant conducts business throughout this District, Georgia, Indiana, and the U.S.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction and venue is proper since Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number

of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 5.1 billion robocalls were placed in May 2023 alone, at a rate of 164.0 million per day. www.robocallindex.com (last visited July 2, 2023).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Defendant MortgagePros offers mortgage related services to consumers including home mortgages and refinancing.[3]

15. Defendant MortgagePros places telemarketing cold calls to consumers who have done a credit pull, as per the experiences of both Plaintiff Rice and Plaintiff Miller, despite the fact that those consumers have never provided consent to receive telemarketing calls.

16. Unfortunately, Defendant MortgagePros is placing unsolicited calls to consumers that registered their phone numbers on the DNC, such as Plaintiff Miller.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://mymtgpros.com/

17. Samantha Marty, a MortgagePros employee specifically referenced placing 125+ cold calls a day to consumers who recently had their credit pulled:

**Samantha Marty** (She/Her)
Financial Professional NMLS:2256065

**Experience**

**Mortgage Loan Officer**
Mortgage Pros · Full-time
Jun 2022 - Nov 2022 · 6 mos

Cold calling over 125+ prospective clients a day who recently got their credit pulled looking for a mortgage. Acted as a knowledgeable mortgage loan officer in support of multiple different lenders across the nation. Set up new accounts by recording account information. Generated mortgage loans and established procedures to achieve loan origination business objectives of financial risk. First and main point of contact for mortgage borrower from start of origination to closing of the loan. Collecting documents, analyzing and reviewing information ensuring the file was complete and ready to proceed with the closing. First contact for resolution of escalated issues and internal inquiries presented by analysts and internal partners. Stringently maintain a 100% quality rate for overall internal and external processes. Consult and communicate with borrowers through various channels regarding the full lifecycle of the mortgage loan issues. Oversee communications strategy for the clear conveyance of mortgage banking concepts.

**Skills:** Prospects · Lead Generation · Written Communication · Relationship Building · Sales · Lead Qualification · Sales Processes [4]

18. In addition, consumers have posted complaints online directly to Defendant Mortgage Pros through its Google profile regarding unsolicited telemarketing calls that they received after having their credit pulled, including:

- "I had my credit pulled buy another company for a new home mortgage. My information was bought by MortgagePros and they called me 5 times within an hour. They all seemed to think I was refinancing, so they didn't even have accurate information. All the reps were very rude and even hung up on me in mid sentence of asking them not to call again. They are predatory on veterans and pretend to "appreciate" your service. Stay away from this company at all costs."[5]
- "They got my number from the credit bureau and have called me over 50 times today. When I have asked them to stop they said no. I hang up

[4] https://www.linkedin.com/in/samanthamartyy/
[5] https://www.google.com/search?q=%22mortgagepros

on them and they keep calling back. I have never seen any business more rude or like this."[6]

- "'Tony' called after my credit was pulled for a home equity loan. He hung up on me when I was telling him I wasn't interested in refinancing."[7]

19. To make matters worse, Defendant MortgagePros continues to place unsolicited calls to consumers after being told to stop calling, as per the experiences of Plaintiff Rice and Plaintiff Miller.

20. Numerous consumers have posted complaints online regarding unsolicited telemarketing calls they received from MortgagePros, including complaints about unsolicited calls they received after asking for the calls to stop, many of which were addressed directly to MortgagePros, including:

**Google.com MortgagePros Reviews:**

- "12 calls in 3.5 hours after being told not interested. ***Usually when a company is cold calling you, and continues to keep calling you after you tell them your not interested*** after the first call is a Big Red Flag! This is the type of company that you need to steer clear of. And if you dive into them a little more you will see this is a pattern. Again, companies with this type of aggressive sales tactics are usually not the type of place you want to do business with."[8] (emphasis added)
- "Kept calling us, but we never inquired or reached out to them. ***Kept harassing even when we find them to take us off the call list*** and that we weren't interested"[9] (emphasis added)
- "***This company is relentless after communicating that I don't want any business from them I keep getting about 10 phone calls a day.*** I

---

[6] Id.
[7] Id.
[8] https://www.google.com/search?q=%22mortgagepros
[9] Id.

would not recommend doing any business with them as they appear to be spam and ***do not take no for an answer***."[10] (emphasis added)

- "I don't even live near this company but they ***continuously call me looking for someone who probably gave them the wrong number. Will not stop calling me and will not listen to me when I say I am not this person and take me off the list.*** Terrible company with predatory tactics."[11] (emphasis added)
- "Company bought my information and continues to harass me. I write down every call and each representative says they are with Mortgage Pros. ***Ask each time to be put on their DNC (DO NOT CALL LIST) I did not opt into phone calls and they continue to call.*** Just called again and when I asked to be put on the DNC they just hang up on me. If anyone else is experiencing similar issues please file a complaint with the CFPB and the FCC. This company is extremely unprofessional and will eventually understand the importance of customer service."[12] (emphasis added)
- "I've received numerous phone calls from this company even after registering on the federal do not call list. ***I've asked them every time to remove me from their call list. One of their employees argued with me.*** I told them that I didn't want a conversation and that I wanted them to remove me from their list and they continued. I explained that their continued conversation when I didn't want conversation was harassment to which the employee agreed but kept saying they weren't harassing me. This is a malicious company."[13] (emphasis added)
- "***This company has been calling my # over and over for the last 3 weeks, some days over 10 times a day! I never contacted this place, they keep asking for the wrong person, they have the wrong address.*** They are not in the same state. I'm not in the market to do anything for my mortgage. A few days ago ***I told the rep they have the wrong person, she hung up in my face.*** When I called back from the number they called me from it goes straight to voicemail, I left a voicemail for someone to call me back and to no surprise no one called back! This company is spoofing their phone number, they are located in Troy Michigan however when they call me the number shows as Colorado. Not only that, every time they call the numbers change over and over.

---

[10] Id.
[11] Id.
[12] Id.
[13] Id.

> I have contacted the FTC and DNC about your company."[14] (emphasis added)

21. In response, Plaintiff Rice and Plaintiff Miller bring this case seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act by placing unsolicited calls to phone numbers that are registered on the DNC and by failing to maintain adequate policies and procedures for maintaining and honoring do not call requests, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF RICE'S ALLEGATIONS

22. Plaintiff Rice is the subscriber and sole user of the cell phone number ending with 0001.

23. Plaintiff Rice uses her cell phone number for personal and household use only.

24. Plaintiff Rice is the subscriber and sole user of the landline residential phone number ending with 4981.

25. Plaintiff Rice uses her landline phone number for personal and household use only.

26. Neither of Plaintiff Rice's telephone numbers is associated with a business.

---

[14] Id.

27. Both of Rice's numbers are used for communicating with family and friends.

28. Both of Rice's numbers are subscribed to residential service as opposed to commercial service.

29. Both of Rice's numbers are subscribed to in her personal name, and not in the name of a business.

30. Both of Rice's numbers are paid for by Rice, without being reimbursed by a business.

31. On or around June 16, 2023, Plaintiff Rice had her credit pulled through her mortgage loan provider.

32. Beginning June 17, 2023 and onwards, Plaintiff Rice's cell phone and landline phone numbers were inundated with telemarketing calls from mortgage companies, including MortgagePros.

33. On June 17, 2023 at 10:21 AM, Plaintiff Rice received an unsolicited call from MortgagePros to her cell phone number, from 912-809-5043.

34. When 912-809-5043 is dialed, the call is answered by MortgagePros.

35. On June 17, 2023 at 10:26 AM, Plaintiff Rice received an unsolicited call from MortgagePros to her landline phone number, from 707-466-7846.

36. A voicemail was left from an employee named Yusuf who identified the company name MortgagePros. Yusuf was calling to offer mortgage financial

services to Plaintiff Rice and he asked for a call back to phone number 586-209-6343.

37. On June 17, 2023 at 10:54 AM, Plaintiff Rice received another unsolicited call from MortgagePros to her cell phone number, from 912-900-3357.

38. Plaintiff Rice called 912-900-3357 back on June 17, 2023 at 10:54 AM. She spoke to a live agent that identified themselves as working for MortgagePros and demanded that Defendant MortgagePros should stop calling her cell phone number.




*Figure 1 - June 17, 2023*

39. When 912-900-3357 is dialed, the call is answered by MortgagePros.

40. Despite her clear stop request, Plaintiff Rice received another unsolicited call on June 17, 2023 at 1:38 PM from Mortgage Pros to her cell phone, from 912-559-0496.

41. Plaintiff Rice received an unsolicited call to her cell phone from MortgagePros on June 19, 2023 at 8:33 AM from 912-559-0496. Once again, Plaintiff Rice spoke to an employee and asked for the calls to stop.

42. When 912-559-0496 is dialed, the call is answered by MortgagePros.

43. On June 19, 2023 at 9:42 AM, Plaintiff Rice received an unsolicited call from MortgagePros to her cell phone number, from 912-737-0651. Plaintiff Rice answered this call but she quickly hung up when she found out that the call was regarding Mortgage-related financial services.

44. When 912-737-0651 is dialed, the call is answered by MortgagePros.

45. Plaintiff Rice then received 2 more calls from Defendant MortgagePros, from 912-737-0651 on June 19, 2023 at 10:08 AM and at 10:20 AM, both to her cell phone number.

46. Plaintiff Rice received yet another unsolicited call to her cell phone from MortgagePros on June 19, 2023 at 10:44 AM, from 912-556-0986. This call was answered and Plaintiff Rice once again told an employee to stop calling her phone number.

47. When 912-556-0986 is dialed, the call is answered by MortgagePros.

48. On June 21, 2023 at 9:37 AM, Plaintiff Rice received a 2nd unsolicited call to her landline phone number, from 707-466-7846.

49. This call was not answered but a voicemail was left from Yusuf, a MortgagePros employee who apologized for being so persistent, but he wanted to speak to Plaintiff Rice about mortgage financing options. Yusuf had previously called Plaintiff's landline phone number on June 17, 2023. Yusuf asked Plaintiff Rice to call him back at 586-209-6343.

50. All of the phone numbers that Plaintiff Rice received calls from can be called back and when called back identify the called party as being MortgagePros.

51. Plaintiff Rice never made any kind of inquiry to receive mortgage-related services from Defendant MortgagePros.

52. Plaintiff Rice never provided her phone numbers to MortgagePros.

53. The unwanted solicitation calls that Plaintiff Rice received from MortgagePros have harmed Plaintiff Rice in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

54. The unsolicited calls also caused considerable frustration, as Plaintiff Rice felt harassed by the number of communications she received, especially after telling Defendant MortgagePros to stop contacting her.

**PLAINTIFF MILLER'S ALLEGATIONS**

55. Plaintiff Miller is the subscriber and sole user of the cell phone number ending with 8011.

56. Plaintiff Miller registered her cell phone number on the DNC on April 6, 2004.

57. Plaintiff Miller uses her cell phone number for personal use only as one would use a landline telephone number in a home.

58. Plaintiff Miller does not use her cell phone number for business use.

59. Plaintiff Miller's number is used for communicating with family and friends.

60. Plaintiff Miller's number is subscribed to residential service as opposed to commercial service.

61. Plaintiff Miller's number is subscribed to in her personal name, and not in the name of a business.

62. Plaintiff Miller's number is paid for by Plaintiff Miller, without being reimbursed by a business.

63. The calls that Plaintiff Miller received from Defendant MortgagePros were all received more than 31 days after Plaintiff registered her cell phone number on the DNC.

64. Toward the middle of June 2023, Plaintiff Miller had her credit pulled by her bank.

65. Plaintiff Miller did not fill out any documentation online. She was not looking to get a loan from any organization other than her bank.

66. On June 14, 2023, Plaintiff Miller received an unsolicited telemarketing call from Defendant MortgagePros to her cell phone number, from 812-735-6447.

67. When Plaintiff Miller answered this call, an employee came on the line soliciting a mortgage loan and refinancing. This employee did not mention a company name.

68. Plaintiff Miller told this employee to stop calling her cell phone number and she hung up the phone.

69. When 812-735-6447 is dialed, the call is answered by MortgagePros.

70. Despite the stop request, Plaintiff Miller received additional unsolicited calls from Defendant MortgagePros to her cell phone, including:

- June 14, 2023 from 812-735-6447 – Not answered;
- June 14, 2023 from 812-894-5043 – Not answered;
- June 14, 2023 from 812-864-3063 – Not answered;
- June 14, 2023 from 812-635-2486 – Not answered;
- June 15, 2023 from 812-735-6447 – Not answered;
- June 15, 2023 from 812-864-3063 (twice) – Not answered;
- June 15, 2023 from 812-635-2486 – Not answered;
- June 16, 2023 from 812-735-6447 – Not answered.

71. When 812-894-5043 is dialed, the call is answered by MortgagePros.

72. When 812-864-3063 is dialed, the call is answered by MortgagePros.

73. When 812-635-2486 is dialed, the call is answered by MortgagePros.

74. When 812-864-3063 is dialed, the call is answered by MortgagePros.

75. On June 16, 2023, Plaintiff Miller received yet another unsolicited call from Defendant MortgagePros to her cell phone number, from 812-635-2486.

76. When Plaintiff Miller answered this call, an employee came on the line soliciting a mortgage loan and refinancing. This employee did not mention a company name.

77. Plaintiff Miller was upset and told this employee to stop calling her cell phone number. She then hung up the phone.

78. When all of the aforementioned telephone numbers are called, they are answered by an automated system identifying the company name as MortgagePros.

79. Plaintiff Miller never provided her phone number to MortgagePros.

80. The unwanted solicitation calls that Plaintiff Miller received from MortgagePros have harmed Plaintiff Miller in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

81. Seeking redress for these injuries, Plaintiff Rice and Plaintiff Miller, on behalf of themselves and Classes of similarly situated individuals, bring suit under the TCPA.

## CLASS ALLEGATIONS
## Class Treatment Is Appropriate for Plaintiffs' TCPA Claims Arising From the Defendant's Actions

82. Plaintiff Rice and Plaintiff Miller bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) MortgagePros called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff Miller.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called on their residential telephone line at least two times (2) including at least once after the consumer had communicated their wish to not receive any further calls from the Defendant (3) for substantially the same reason Defendant called the Plaintiffs.

83. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally

adjudicated and/or released. Plaintiff Rice and Plaintiff Miller anticipate the need to amend the Class definitions following appropriate discovery.

84. **Typicality and Numerosity**: Plaintiff Rice and Plaintiff Miller are members of the Classes who received calls as part of the same telemarketing campaign as other Class members, and on information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

85. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff's and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant's conduct violated the TCPA;

(b) whether Defendant placed multiple calls within a 12-month period to Plaintiff Miller and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether members of the Classs are entitled to treble damages based on the willfulness of Defendant's conduct.

86. **Adequate Representation**: Plaintiff Rice and Plaintiff Miller will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in class actions. Plaintiff Rice and Plaintiff Miller have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to either Plaintiff. Plaintiff Rice, Plaintiff Miller and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor their counsel have any interest adverse to the Classes.

87. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classs and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Rice and/or Plaintiff Miller. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual

prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Miller and the Do Not Registry Class)**

88. Plaintiff Miller repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

89. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

90. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

91. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Miller and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

92. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Miller and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

93. As a result of Defendant's conduct as alleged herein, Plaintiff Miller and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

94. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rice, Plaintiff Miller and the Internal Do Not Call Class)**

95. Plaintiff Rice and Plaintiff Miller repeat and reallege the prior paragraphs of this Complaint and incorporate them by reference herein.

96. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

97. Defendant failed to maintain a written policy for maintaining a do not call list.

98. Defendant failed to train personnel engaged in telemarketing in the existence and use of a do not call list.

99. Defendant failed to record do not call requests.

100. Defendant failed to maintain a do not call list.

101. Defendant placed calls to Plaintiff Rice, Plaintiff Miller and members of the Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to

initiate telemarketing calls.

102. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

103. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff Rice, Plaintiff Miller and the other members of the Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Rice and Plaintiff Miller, individually and on behalf of the Classes, pray for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Rice and Plaintiff Miller as the representative of the Classes; and appointing their attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Rice and Plaintiff Miller request a jury trial.

**DAYNA RICE**, individually, **LYNDSEE MILLER**, individually, and on behalf of all others similarly situated,

DATED this 4th day of October, 2023.

By: /s/ *Avi R. Kaufman*
Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

Stefan Coleman
law@stefancoleman.com
Coleman PLLC
66 West Flagler Street, Suite 900
Miami, FL 33130
Telephone: (877) 333-9427

*Attorneys for Plaintiffs and the putative Classes*