**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **DAYNA RICE**, individually,<br>**LYNDSEE MILLER**, individually,<br>and on behalf of all others similarly situated,<br>Plaintiffs, | Case 2:23-cv-11726-MAG-DRG |
| v. | Hon. Mark A. Goldsmith<br>Mag. Judge David R. Grand |
| **MORTGAGEPROS, LLC**, a Michigan company,<br>Defendant. | |

**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE CERTAIN ALLEGATIONS FROM PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant MortgagePros, LLC ("MortgagePros") hereby respectfully moves to dismiss the "First Amended Class Action Complaint" (ECF No. 13, "FAC") filed by Plaintiffs Dana Rice ("Rice") and Lyndsee Miller (individually "Miller" and collectively with Rice, "Plaintiffs") in the above-captioned matter for (i) lack of federal subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) as to Miller, who lacks standing under Article III of the United States Constitution; and (ii) failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) as to both Plaintiffs. In the alternative, MortgagePros respectfully moves to strike certain improper allegations from the FAC pursuant to Fed. R. Civ. P. 12(f) and to strike

Plaintiffs' faulty class definitions and other class-related allegations under Fed. R. Civ. P. 12(f) and 23. The bases for this Motion are more fully set forth in the attached Memorandum in Support, which is incorporated herein by reference as if fully stated.

Pursuant to E.D. Mich. L.R. 7.1, the undersigned certifies that counsel for MortgagePros made reasonable and timely efforts to confer with counsel for Plaintiffs regarding the bases for this Motion and whether they would concur with the relief sought herein prior to filing same, including via email on October 31, 2023 and by phone on November 1, 2023. Plaintiffs' indicated that they oppose this Motion.

Dated: November 1, 2023

Respectfully submitted,

By: /s/ A. Paul Heeringa

**MANATT, PHELPS & PHILLIPS, LLP**
John W. McGuinness (CA Bar No. 277322)*
A. Paul Heeringa (IL Bar No. 6288233)*
151 N. Franklin Street, Suite 2600
Chicago, Illinois 60606
(312) 399-9607
Email: jmcguinness@manatt.com
pheeringa@manatt.com

**Howard & Howard**
Nicholas T. Chapie**
450 W 4th St.
Royal Oak, MI 48067
(248) 645-1483
nchapie@howardandhoward.com

***Attorneys for Defendant MortgagePros, LLC***

**Permanently admitted to E.D. Mich. Bar*
*** Local Counsel*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1
APPLICABLE LEGAL STANDARDS ...........................................................3
A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction / Standing..........3
B. Rule 12(b)(6) – Failure to State a Claim for Relief .............................6
ARGUMENT ...........................................................................................7
I. MILLER'S CLAIMS SHOULD BE ENTIRELY DISMISSED UNDER RULE 12(B)(1) FOR LACK OF ARTICLE III STANDING ........7
II. PLAINTIFFS' REQUESTS FOR INJUNCTIVE RELIEF SHOULD ALSO BE DISMISSED FOR LACK OF ARTICLE III STANDING ..........9
III. COUNT II OF THE FAC SHOULD ALSO BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM FOR RELIEF .....10
IV. ALTERNATIVELY, THE COURT SHOULD STRIKE CERTAIN IMPROPER ALLEGATIONS UNDER RULES 12(F) AND 23 ................16
A. Paragraphs 17-20 are Immaterial, Impertinent, Scandalous, and Unduly Prejudicial and Should be Stricken Accordingly ..................16
B. Plaintiffs' Faulty Proposed Class Definitions and Class Related Allegations Should Be Stricken Pursuant to Rules 12(f) and 23 .......19
CONCLUSION ........................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrahamson v. Smith*,
2014 WL 4557625 (S.D. Ohio Sept. 12, 2014) ....................6

*Ames v. LaRose*,
2023 WL 2184600 (S.D. Ohio Feb. 23, 2023) ....................3, 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*Auer v. Robbins*,
519 U.S. 452 (1997)....................14

*Baccari v. Carguard Admin., Inc.*,
2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) ....................8, 9

*Baisden v. Credit Adjusts., Inc.*,
813 F.3d 338 (6th Cir. 2016) ....................23

*Balthazor v. Cent. Credit Servs., Inc.*,
2012 WL 6725872 (S.D. Fla. Dec. 27, 2012)....................22

*Barnett v. Bank of Am., N.A.*,
2021 WL 2187950, at *5 (W.D.N.C. May 28, 2021) ....................23

*Barr v. Macy's.com, LLC*,
2023 WL 6393480 (S.D.N.Y. Sept. 29, 2023) ....................11, 12, 13

*Begala v. PNC Bank, Ohio, Nat'l Ass'n*,
214 F.3d 776 (6th Cir. 2000) ....................25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................6

*Benzion v. Vivint, Inc.*,
2014 WL 11531368 (S.D. Fla. Jan. 17, 2014)....................11

*Callier v. Nat'l United Grp., LLC*,
2021 WL 5393829 (W.D. Tex. Nov. 17, 2021)....................13

*Chapman v. CKE Restaurants Holdings, Inc.*,
2020 WL 1230130 (E.D.N.C. Mar. 12, 2020)....................21

*Charvat v. DFS Servs. LLC*,
781 F. Supp. 2d 588 (S.D. Ohio 2011) ....................11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Charvat v. EchoStar Satellite, LLC*,
630 F.3d 459 (6th Cir. 2010) ....................13

*Charvat v. GVN Michigan, Inc.*,
561 F.3d 623 (6th Cir. 2009) ....................11

*Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ....................13, 14

*Cholly v. Uptain Grp., Inc.*,
2017 WL 449176 (N.D. Ill. Feb. 1, 2017) ....................22, 25

*Conde v. Sensa*,
259 F. Supp. 3d 1064 (S.D. Cal. 2017) ....................18

*Eidson v. Tenn. Dep't of Child. Servs.*,
510 F.3d 631 (6th Cir. 2007) ....................7

*Eldridge v. Cabela's Inc.*,
2017 WL 4364205 (W.D. Ky. Sept. 29, 2017) ....................19, 22, 23, 25

*Emery v. Michigan Dep't of C.R.*,
2016 WL 1090429 (E.D. Mich. Mar. 21, 2016) ....................5

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ....................17

*Fisher v. Alarm.com Holdings, Inc.*,
2018 WL 5717579 (N.D. Ill. Nov. 1, 2018) ....................18, 19

*Flores v. City of Cal. City*,
2019 WL 1934016 (E.D. Cal. May 1, 2019) ....................25

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
528 U.S. 167 (2000) ....................4

*Gallegos v. Roman Catholic Archbishop of San Francisco*,
2016 WL 3162203 (N.D. Cal. June 7, 2016) ....................17

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ....................21

*Gene and Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008) ....................23

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*,
491 F.3d 320 (6th Cir. 2007) ....................................................................5

*Gillam v. Reliance First Capital, LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ..........................................24

*Glazer v. Reimer L. Co.*,
2019 WL 651599 (N.D. Ohio Feb. 15, 2019)............................................20

*Grendell v. Ohio S. Ct.*,
252 F.3d 828 (6th Cir. 2001) ....................................................................4

*Hicks v. Alarm.com Inc.*,
2020 WL 9261758 (E.D. Va. Aug. 8, 2020) ................................17, 18, 24

*Hirsch v. USHealth Advisors, LLC*,
337 F.R.D. 118 (N.D. Tex. 2020)........................................................24, 25

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
934 F. Supp. 2d 1219 (C.D. Cal. 2013) ....................................................18

*In Re Rules & Regs. Implementing the TCPA*,
18 F.C.C. Rcd. 14014 (2003).....................................................................14

*Jones v. City of Cincinnati*,
521 F.3d 555 (6th Cir. 2008) ....................................................................7

*Kanoski v. Sterling Paper Co.*,
2011 WL 13232288 (S.D. Ohio June 21, 2011)..........................................4

*Keating v. Peterson's Nelnet, LLC*,
615 F.App'x 365 (6th Cir. 2015).................................................................15

*Kennedy v. Cleveland*,
797 F.2d 297 (6th Cir. 1986) ....................................................................20

*Laccinole v. Appriss, Inc.*,
453 F. Supp. 3d 499 (D.R.I. 2020) .......................................................10, 13

*Lane v. Renoir-Large*,
2023 WL 2974438 (S.D. Ohio Apr. 17, 2023) ...........................................5

*League of United Latin Am. Citizens v. Bredesen*,
500 F.3d 523 (6th Cir. 2007) ....................................................................7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
134 S.Ct. 1377 (2014)...............................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Leyse v. Clear Channel Broad., Inc.*,
545 F.App'x 444 (6th Cir. 2013)....................................................14, 15

*Loreto v. Procter & Gamble Co.*,
2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) ............................................19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..............................................................................3

*Lyshe v. Levy*,
854 F.3d 855 (6th Cir. 2017) ...................................................................3

*Maine State Retirement Sys. v. Countrywide Fin. Corp.*,
2011 WL 4389689 (C.D. Cal. May 5, 2011)................................................18

*Mantha v. QuoteWizard.com, LLC*,
2022 WL 325722 (D. Mass. Feb. 3, 2022) ..................................................24

*Miller v. Time Warner Cable Inc.*,
2016 WL 7471302 (C.D. Cal. Dec. 27, 2016)..........................................5, 10

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
650 F.3d 1046 (6th Cir. 2011) ...................................................................7

*Nichols v. Muskingum Coll.*,
318 F.3d 674 (6th Cir. 2003) ....................................................................5

*Nicosia v. Amazon*,
834 F.3d 220 (2d Cir. 2016) .....................................................................9

*Northeastern Florida Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*,
508 U.S. 656 (1993)..............................................................................4

*O'Bryan v. Holy*,
556 F.3d 361 (6th Cir. 2009) ....................................................................5

*O'Shea v. Littleton*,
414 U.S. 488 (1974)..............................................................................9

*Orsatti v. Quicken Loans, Inc.*,
2016 WL 7650574 (C.D. Cal. Sept. 12, 2016) .......................................15, 16

*Pepka v. Kohl's Dep't Stores, Inc.*,
2016 WL 8919460 (C.D. Cal. Dec. 21, 2016)...............................................22

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Perrong v. S. Bay Energy Corp.*,
2021 WL 1387506 (E.D. Pa. Apr. 13, 2021) .......... 15

*Pilgrim v. Universal Health Card, LLC*,
660 F.3d 943 (6th Cir. 2011) .......... 19, 20

*Rahimian v. Adriano*,
2022 WL 798371 (D. Nev. Mar. 16, 2022) .......... 12, 13

*Rogers v. Assurance IQ, LLC*,
2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) .......... 24

*RSM Prod. Corp. v. Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009) .......... 18

*Rutkofske v. Norman*,
114 F.3d 1188 (6th Cir. June 4, 1997) .......... 6

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1651 (2019) .......... 21

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
863 F.3d 460 (6th Cir. 2017), *as corrected on denial of reh'g en banc*
(Sept. 1, 2017) .......... 21, 22

*Sauter v. CVS Pharmacy, Inc.*,
2014 WL 1814076 (S.D. Ohio May 7, 2014) .......... 19

*Sawyer v. KRS Glob. Biotech., Inc.*,
2018 WL 4214386 (S.D. Ohio Sept. 5, 2018) .......... 22

*Schaevitz v. Braman Hyundai, Inc.*,
437 F. Supp. 3d 1237 (S.D. Fla. 2019) .......... 5, 10

*Schlesinger v. Reservists Comm. to Stop the War*,
418 U.S. 208 (1974) .......... 21

*Shelby Advocs. for Valid Elections v. Hargett*,
947 F.3d 977 (6th Cir. 2020) .......... 4, 9, 10

*Sherrod v. Enigma Software Grp. USA, LLC*,
2016 WL 25979 (S.D. Ohio Jan. 4, 2016) .......... 21

*Simmons v. Charter Commc'ns, Inc.*,
222 F. Supp. 3d 121 (D. Conn. 2016), *aff'd*, 686 F.App'x 48 (2d Cir.
2017) .......... 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Smith v. Vision Solar LLC*,
2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ........ 24

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 3, 4

*St. Francis Health Care Ctr. v. Shalala*,
205 F.3d 937 (6th Cir. 2000) ........ 14, 15

*Stalker v. MBS Direct, LLC*,
2012 WL 6642518 (E.D. Mich. Dec. 20, 2012) ........ 22

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........ 4, 9

*Sterling v. Securus Techs., Inc.*,
2020 WL 2198095 (D. Conn. May 6, 2020) ........ 13

*Tam Travel, Inc. v. Delta Airlines, Inc.*,
583 F.3d 896 (6th Cir. 2009) ........ 6

*Tenn. Gen. Assembly v. U.S. Dep't of State*,
931 F.3d 499 (6th Cir. 2019) ........ 3

*TransUnion LLC v. Ramirez*,
141 S.Ct. 2190 (2021) ........ 4

*Trenz v. On-Line Administrators, Inc.*,
2020 WL 5823565 (C.D. Cal. Aug. 10, 2020) ........ 22

*U.S. Diamond & Gold v. Julius Klein Diamonds LLC*,
2007 WL 1026421 (S.D. Ohio Mar. 29, 2007) ........ 17

*U.S. v. Ritchie*,
15 F.3d 592 (6th Cir. 1994) ........ 5

*United States v. Doyle*,
2022 WL 1186182 (S.D. Ohio Apr. 21, 2022) ........ 25

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ........ 21

*Winner v. Kohl's Dept. Stores, Inc.*,
2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) ........ 8

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Wiseberg v. Toyota Motor Corp.*,
2012 WL 1108542 (D.N.J. Mar. 30, 2012), *on reconsideration in part*, 2012 WL 12910267 (D.N.J. Aug. 17, 2012) .......... 18

*Woo v. Home Loan Group, L.P.*,
2007 WL 6624925 (S.D. Cal. Jul. 27, 2007) .......... 17

*Yagman v. Allianz Ins.*,
2015 WL 5553460 (C.D. Cal. May 11, 2015) .......... 20

## STATUTES

47 U.S.C. § 227(c)(5) .......... 7, 13

47 U.S.C. § 227(d) .......... 7

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(c)(2) .......... 7

47 C.F.R. § 64.1200(d) .......... 7

47 C.F.R. § 64.1200(d)(1) .......... 12

47 C.F.R. § 64.1200(d)(3) .......... 13

## RULES

Fed. R. Civ. P. 12(b)(1) .......... passim

Fed. R. Civ. P. 12(b)(6) .......... passim

Fed. R. Civ. P. 12(f) .......... passim

Fed. R. Civ. P. 23 .......... 3, 16, 19, 25

Fed. R. Civ. P. 23(b)(3) .......... 21

Fed. R. Civ. P. 23(c)(1)(A) .......... 20

## ISSUES PRESENTED

1. Whether, as a factual matter, Plaintiff Miller has Article III standing to bring her asserted claims and, thus, whether this Court has federal subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). MortgagePros answers "No."
2. Whether Plaintiffs have adequately pled plausible claims for relief under Fed. R. Civ. P. 12(b)(6). MortgagePros answers: "No."
3. Whether Plaintiffs' facially improper class and other allegations should be stricken under Fed. R Civ. P. 12(f) and/or 23. MortgagePros answers: "Yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

- *Begala v. PNC Bank, Ohio, Nat'l Ass'n,* 214 F.3d 776 (6th Cir. 2000)
- *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623 (6th Cir. 2009)
- *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010)
- *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011)
- *Keating v. Peterson's Nelnet, LLC*, 615 F.App'x 365 (6th Cir. 2015)
- *Lyshe v. Levy,* 854 F.3d 855 (6th Cir. 2017)
- *Spokeo, Inc. v. Robins,* 578 U.S. 330 (2016)
- *Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499 (6th Cir. 2019)
- *U.S. v. Ritchie*, 15 F.3d 592 (6th Cir. 1994)

## INTRODUCTION

In their FAC, Plaintiffs continue to allege, in conclusory fashion, that MortgagePros violated the "Do-Not-Call" ("DNC") provisions of the Telephone Consumer Protection Act ("TCPA")[1] by "cold-calling" them after they had their credit pulled by a lender. Despite Plaintiffs' few amendments to their initial pleading, however, the FAC still lacks sufficient non-conclusory facts, in accordance with federal pleading standards, supporting viable TCPA claims against MortgagePros. Moreover, beyond the FAC's facial defects, Plaintiff Miller's claims fail on Article III standing grounds as a factual matter, simply because ***MortgagePros did not call her cell phone*** as she alleges. And since Plaintiffs' FAC represents their second failed attempt to plead a claim against MortgagePros, and as no amount of factual amendment can cure Miller's lack of standing, Plaintiffs should not be given a third opportunity. Therefore, FAC should be dismissed in its entirety and with prejudice.

As discussed in greater detail below, Plaintiffs' FAC is fatally deficient, on its face and as a matter of fact, and should be dismissed for at least the following reasons:

**First**, as a threshold matter, Counts I and II should be dismissed as to Plaintiff Miller under Rule 12(b)(1) because she lacks Article III standing and, as such, this Court lacks federal subject matter jurisdiction over her claims. In this regard, extrinsic

[1] Miller seeks relief under the National DNC Registry provisions (Count I) and the TCPA's "internal" DNC regulations (Count II). Rice seeks relief only under the latter.

evidence (which this Court may properly consider here under Rule 12(b)(1)) shows that MortgagePros did not call Miller's cell phone number as alleged in the FAC and, therefore, she cannot show that she suffered any "injury in fact" that is traceable to MortgagePros, as is required for Article III standing. Consequently, Miller's claims against MortgagePros in this case should be entirely dismissed on standing grounds. Moreover, on its face, the FAC omits any facts supporting Plaintiffs' requests for injunctive relief, as they do not allege anything suggesting that they are at risk of a future injury (*i.e.,* that MortgagePros may call them in the future), as required to have Article III standing to seek injunctive relief in any federal case. Therefore, this Court lacks federal subject matter jurisdiction to award such relief here, and thus it should dismiss both Plaintiffs' bald requests for injunctive relief under Rule 12(b)(1), as well.

**<u>Second</u>**, Plaintiffs' "internal" DNC claims (in Count II) should also be dismissed under Rule 12(b)(6) for their continued failure to plead facts supporting the essential elements of such a claim. Indeed, Plaintiffs still fail to allege ***any*** actual facts suggesting MortgagePros did not maintain internal DNC procedures, as specified by the TCPA's regulations. Rather, Plaintiffs' allegations regarding MortgagePros' "internal" DNC procedures are entirely conclusory, speculative, and inadequate as pled, as well as are directly contradicted by other "facts" alleged in the FAC.

**<u>Lastly</u>**, while the entire FAC should be dismissed for at least the reasons above, it also interjects various immaterial and impertinent allegations from anonymous posts

on third-party websites having nothing to do with ***this*** case. Plaintiffs' class allegations are also facially inadequate, such that certification cannot be granted as pled. Thus, if the Court does not dismiss the FAC in its entirety or with prejudice (and it should), it should strike those clearly improper allegations now under Rules 12(f) and/or 23.

## APPLICABLE LEGAL STANDARDS

### A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction / Standing

A plaintiff's lack of Article III standing to bring a claim is considered under Rule 12(b)(1), as the Court lacks federal subject matter jurisdiction to hear the claim. *See, e.g., Lyshe v. Levy,* 854 F.3d 855, 857 (6th Cir. 2017) (citations omitted); *Ames v. LaRose,* 2023 WL 2184600, at *2 (S.D. Ohio Feb. 23, 2023) (citing *Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019)). In this regard, the plaintiff indisputably bears the burden of demonstrating his or her Article III standing to bring the claims being asserted. *See Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016). To plead Article III standing and avoid dismissal on this basis here, each Plaintiff must plead sufficient facts demonstrating that: (1) she suffered an "injury in fact," (2) there must be a causal connection between the injury and the conduct complained of (*a.k.a.* "causation" or "traceability"), and (3) the injury is capable of being redressed by a favorable decision (*a.k.a.* "redressability"). *Id*. at 338 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "A failure to satisfy any one of the three elements deprives a plaintiff of standing, and accordingly, a court

does not have subject matter jurisdiction to hear the claim." *Kanoski v. Sterling Paper Co.,* 2011 WL 13232288, at *3 (S.D. Ohio June 21, 2011) (citing*, inter alia, Northeastern Florida Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville,* 508 U.S. 656, 663-64 (1993)). The first element is considered to be the "foremost" of the three. *Spokeo*, 578 U.S. at 338-39 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). To meet it, one "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Spokeo*, 578 U.S. at 342. Thus, "[n]o concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2220 (2021). Instead, the injury must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180 (2000). Further, the second element requires that the alleged "injury in fact" be "fairly traceable" to the defendant's conduct, not a third party. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S.Ct. 1377, 1386 (2014).

Additionally, to have Article III standing to seek injunctive relief in any federal case, Plaintiffs must plead sufficient, non-conclusory facts suggesting that they are at risk of a future injury. *See Shelby Advocs. for Valid Elections v. Hargett,* 947 F.3d 977, 981 (6th Cir. 2020) (For "injunctive relief, a claimant must show a present ongoing harm or imminent future harm.") (citing *Grendell v. Ohio S. Ct.,* 252 F.3d 828, 832 (6th Cir. 2001)). Where (as here) a plaintiff lacks Article III standing to seek injunctive relief, the Court lacks federal subject matter jurisdiction to award such relief

and may dismiss the requests for injunctive relief under Rule 12(b)(1). *See, e.g., Miller v. Time Warner Cable Inc.,* 2016 WL 7471302, at *2–4 (C.D. Cal. Dec. 27, 2016) (dismissing requests for injunctive relief in a TCPA case on this basis); *Schaevitz v. Braman Hyundai, Inc.,* 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (same).

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *Lane v. Renoir-Large,* 2023 WL 2974438, at *1 (S.D. Ohio Apr. 17, 2023) (citing *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack under Rule 12(b)(1) 'questions merely the sufficiency of the pleading[,]' and the trial court therefore takes the [well pled] allegations of the complaint as true." *Id*. (quoting *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co*., 491 F.3d 320, 330 (6th Cir. 2007)). The Court need not accept as true mere conclusory allegations under Rule 12(b)(1). *See*, *e.g., Emery v. Michigan Dep't of C.R.,* 2016 WL 1090429, at *1 (E.D. Mich. Mar. 21, 2016) (citing *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009)). By contrast, "[a] factual attack is a challenge to the factual existence of subject matter jurisdiction." *Lane*, 2023 WL 2974438, at *1 (citing *Ritchie*, 15 F.3d at 598). Thus, "[n]o presumptive truthfulness applies to the factual allegations in [Plaintiff's] Complaint and the Court may consider evidence outside of the pleadings" when ruling on a factual challenge under Rule 12(b)(1). *Ames*, 2023 WL 2184600, at *2 (citing *Nichols v. Muskingum Coll.,* 318 F.3d 674, 677 (6th Cir. 2003)). A plaintiff faced with a motion to dismiss making factual

challenge under Rule 12(b)(1) "'may not rest on factual assertions in its pleadings'" and instead must present evidence to meet their burden of proof. *Abrahamson v. Smith*, 2014 WL 4557625, at *2 (S.D. Ohio Sept. 12, 2014) (quoting *Rutkofske v. Norman,* 114 F.3d 1188, at *3 (6th Cir. June 4, 1997)). Here, MortgagePros makes a factual challenge to Plaintiff Miller's Article III standing (pp. 7-9, *infra*), as well as a facial challenge to both Plaintiffs' standing to seek injunctive relief (pp. 9-10, *infra*).

### B. Rule 12(b)(6) – Failure to State a Claim for Relief

Rule 12(b)(6) mandates dismissal of a complaint for failure to state a claim for relief. To avoid dismissal, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (quotation marks and citation omitted); *see also Twombly*, 550 U.S. at 570 (a plaintiff must allege facts that nudge their claims across the line from merely "conceivable" to "plausible"). While the Court must generally accept well-pled factual allegations as true, it need not do so for legal conclusions couched as fact, unwarranted or unreasonable inferences, or unsupported speculation. *See Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896,

903 (6th Cir. 2009); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008); *Eidson v. Tenn. Dep't of Child. Servs.,* 510 F.3d 631, 634 (6th Cir. 2007); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *New Albany Tractor, Inc. v. Louisville Tractor, Inc*., 650 F.3d 1046, 1050 (6th Cir. 2011).

## ARGUMENT

As before, Plaintiffs seek relief under the TCPA's DNC provisions and related implementing regulations, which together and in pertinent part: (i) prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry (which is pled in Count I as to Plaintiff Miller only); and (ii) require any "person or entity making a call for telemarketing purposes" to "honor a residential subscriber's do-not-call request" made to them within a "reasonable time" and to have internal DNC policies and procedures in place meeting certain minimum standards (which is pled as to both Plaintiffs in Count II). 47 U.S.C. §§ 227(c)(5) & (d); 47 C.F.R. §§ 64.1200(c)(2) & (d); *see also* ECF No. 13, ¶¶ 88-103, PageID.106-110. As shown below, however, Plaintiffs still fail to state such claims or to plead sufficient facts, in accordance with federal pleadings standards, supporting them in their FAC for several reasons.

### I. MILLER'S CLAIMS SHOULD BE ENTIRELY DISMISSED UNDER RULE 12(B)(1) FOR LACK OF ARTICLE III STANDING.

For starters, all of Miller's claims should be dismissed on subject matter

jurisdiction grounds, because extrinsic evidence shows she did not suffer any "injury in fact" that is "traceable" to MortgagePros; thus, she lacks Article III standing.

*Baccari v. Carguard Admin., Inc.,* 2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) is instructive on this front. There, the defendant made a factual challenge to the plaintiff's Article III standing in a TCPA case by presenting competent evidence, in the form of a sworn declaration, demonstrating it did not make or authorize the alleged unlawful calls to the plaintiff. *Id*. at *2–3. Because the plaintiff there did not rebut this evidence, which the *Baccari* court suggested was sufficient to "break the factual link" between the defendant and the plaintiff's alleged harm for Article III standing purposes, the case was dismissed under Rule 12(b)(1) for lack of federal subject matter jurisdiction. *Id*. at *3. *See also Winner v. Kohl's Dept. Stores, Inc.,* 2017 WL 3535038, at *7-8 (E.D. Pa. Aug. 17, 2017) (dismissing TCPA claim under Rule 12(b)(1) where plaintiff lacked an injury). The result should be the same in the present case.

Here, Miller alleges that <u>all</u> of the calls at issue that she claims were from MortgagePros were made to and received on her "cell phone number ending in 8011" that she had purportedly registered in the National DNC Registry in 2004. ECF No. 13, ¶¶ 55-56, 63, 66, 77, PageID.99-102. However, MortgagePros' business records confirm that ***it did not call that number at any time, ever***. *See* Declaration of George Abro, attached hereto, at ¶ 6. And it did not hire or authorize any third party to do so, either. *Id*. Based on this irrefutable evidence, Miller could not have possibly suffered

any "injury in fact" based on alleged calls to her cell phone under the TCPA's DNC provisions, let alone one "traceable" to MortgagePros, when it ***never called her cell in the first place***. Like in *Baccari*, this evidence breaks any possible "factual link" between MortgagePros and Plaintiff Miller's alleged harm here. Therefore, Miller lacks Article III standing and this Court lacks federal subject matter jurisdiction, requiring dismissal of Miller's claims in Counts I and II under Rule 12(b)(1).

## II. PLAINTIFFS' REQUESTS FOR INJUNCTIVE RELIEF SHOULD ALSO BE DISMISSED FOR LACK OF ARTICLE III STANDING.

Both Plaintiffs lack Article III standing to seek injunctive relief (*see* ECF No. 13, ¶ 23, PageID.95) in any event, which requires them to plead sufficient facts suggesting there are "continuing, present adverse effects" traceable to MortgagePros' conduct. *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974); *see also Steel Co.,* 523 U.S. at 108–09 (holding a "generalized interest in deterrence" in sufficient for Article III standing for injunctive relief). In other words, to have standing for injunctive relief here, each Plaintiff must "demonstrate that she is ***likely to be harmed again in the future in a similar way***" by MortgagePros. *Nicosia v. Amazon*, 834 F.3d 220, 239 (2d Cir. 2016) (emphasis added). *See also Shelby,* 947 F.3d at 981 (For "injunctive relief, a claimant must show a present ongoing harm or imminent future harm.").

As applied here, Plaintiffs each allege they received calls over a span of three days on their cell phones. *See* ECF No. 13 ¶¶ 32-48, PageID.96-98 (alleging Plaintiff Rice received calls on her cell phone between June 17-19, 2023); *id.* ¶¶ 66-75,

PageID.100-101 (alleging Plaintiff Miller received calls on her cell phone between June 14-16, 2023). While that also defeats their "internal" DNC claims as a matter of law and warrants dismissal under Rule 12(b)(6) (*see* discussion at pp. 13-16, *infra*), these allegations do not suggest there is any ongoing or imminent threat of ***future*** injury, as is required to have Article III standing to seek injunctive relief in any federal case under binding law. *See Shelby, supra*. Thus, Plaintiffs' requests for injunctive relief fail on standing grounds and should be dismissed under Rule 12(b)(1), too. *See Schaevitz,* 437 F. Supp. 3d at 1251–52 (dismissing request for injunctive relief in TCPA case on this basis); *Miller,* 2016 WL 7471302, at *2–4 (same).

## III. COUNT II OF THE FAC SHOULD ALSO BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM FOR RELIEF.

Aside from the threshold issue of standing, Count II of the FAC should also be dismissed as to both Plaintiffs under Rule 12(b)(6). This is because Plaintiffs' threadbare and conclusory allegations regarding MortgagePros' supposed lack of internal DNC procedures still do not plausibly allege a violation of the TCPA's internal DNC regulations. *See, e.g., Laccinole v. Appriss, Inc.,* 453 F. Supp. 3d 499, 505–06 (D.R.I. 2020) (dismissing where allegations regarding defendants "supposed failure to implement the requisite [internal] procedures [we]re not well-pleaded").

In the Sixth Circuit, and elsewhere where such a cause of action is recognized, it is well accepted that "[t]he 'violation of the [internal DNC] regulations' is the initiation of the phone call without having implemented the minimum procedures[.]"

*Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 632 (6th Cir. 2009). In other words, the TCPA's internal DNC rules do not prohibit "actually calling an individual after the individual has requested placement on a do-not-call list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) (citing *GVN Michigan*, 561 F.3d at 632). Thus, the question is whether the caller ***maintained*** such procedures at the time the alleged violative caller were made, not merely whether additional calls were allegedly received after an internal DNC request. *See id.*; *see also Barr v. Macy's.com, LLC,* 2023 WL 6393480, at *4–6 (S.D.N.Y. Sept. 29, 2023) (dismissing internal DNC claim brought by the same counsel representing Plaintiffs on this basis, among others, recognizing that the "mere fact" a plaintiff receives a call after an internal DNC request is not a violation of the internal regulations) (citing *Simmons v. Charter Commc'ns, Inc.,* 222 F. Supp. 3d 121, 140 (D. Conn. 2016), *aff'd*, 686 F.App'x 48 (2d Cir. 2017)); *Benzion v. Vivint, Inc.*, 2014 WL 11531368, at *5 (S.D. Fla. Jan. 17, 2014) (dismissing where complaint alleged "Defendant called Plaintiff back after being asked not to ever call again" but not "that Defendant made either call while not having the proper procedures in place.").

Here, Plaintiffs' scant allegations regarding MortgagePros' supposed lack of internal DNC procedures (even after amending) are entirely conclusory and speculative, and merely parrot the statutory text (almost verbatim) with no factual

support. *See, e.g.*, ECF No. 13, ¶¶ 97-101, PageID.109-110. At best, Plaintiff concludes, with zero factual basis, that "Defendant placed calls to Plaintiff Rice, Plaintiff Miller and members of the Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls." *Id.*, ¶ 110, PageID.110. Courts have rejected substantially similar allegations as being insufficient to plausibly allege an internal DNC rule violation, without more. *See, e.g., Barr,* 2023 WL 6393480, at *5 (dismissing where plaintiff alleged that the defendant "failed to 'implement[ ] internal procedures for maintaining' and internal DNC registry and/or failed to 'implement[ ] procedures that [met] the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls'"). This Court should reach the same conclusion here.

Further, Plaintiffs do <u>not</u> allege, for example, that either of them requested a copy of MortgagePros' internal DNC policy—which they could have done, per the statute (*see* 47 C.F.R. § 64.1200(d)(1))—and that MortgagePros failed to produce such a policy upon request. That is <u>not</u> a violation of the internal DNC rules by itself, but doing so might at least have given Plaintiffs a minimal factual basis to allege whether MortgagePros had internal procedures in place before they were allegedly called. *See also Barr,* 2023 WL 6393480, at *5 (noting that requesting a copy of the defendant's internal DNC policy might "bolster" such a claim); *Rahimian v. Adriano*,

2022 WL 798371, at *3 (D. Nev. Mar. 16, 2022) (dismissing where plaintiff did not request copy of defendants' internal DNC policy and otherwise did not allege further facts to reasonably infer a violation). That they did not allege this is quite telling.

In sum, despite Plaintiffs' scant amendments and MortgagePros having pointed out this deficiency in its prior motion to dismiss (*see* ECF No. 10), Plaintiffs still plead zero actual facts, beyond their bald conclusions, from which the Court could infer MortgagePros did not have or maintain internal DNC procedures at the time of the alleged calls, as required to state such a claim under the weight of applicable authority. Thus, Count II should be dismissed on this basis, too. *See, e.g.*, *Laccinole*, *Barr*, and *Rahimian*, *supra*; *see also Sterling v. Securus Techs., Inc.,* 2020 WL 2198095, at *6 (D. Conn. May 6, 2020) (dismissing amended complaint asserting internal DNC claim where plaintiff "provided no additional allegations regarding the maintenance or procedures for a do-not-call list"); *Callier v. Nat'l United Grp., LLC,* 2021 WL 5393829, at *7 & 9-10 (W.D. Tex. Nov. 17, 2021) (ruling similarly and dismissing).

Beyond the complete lack of factual support, Plaintiffs' internal DNC claims in Count II also fail as a matter of law. The Sixth Circuit has noted that "the FCC has interpretive authority over the [TCPA] … and its accompanying regulations" including the specific provisions that Plaintiffs invokes for their claim here: 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(3). *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010) (citing *Chevron, USA, Inc. v. Natural Res. Def. Council,*

*Inc.*, 467 U.S. 837, 843–44, (1984) and *Auer v. Robbins*, 519 U.S. 452, 461 (1997)) (internal citations and punctuation omitted). Moreover, it is well settled in this Circuit and elsewhere that "[c]ourts are to give substantial deference to an agency's interpretation of its own regulations." *St. Francis Health Care Ctr. v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000) (internal quotation marks omitted). Consequently, this Court <u>must</u> give deference to FCC declaratory rulings interpreting the TCPA's implementing regulations when deciding whether Plaintiffs have stated a plausible claim for relief under the TCPA's internal DNC provisions here. *See, e.g., Leyse v. Clear Channel Broad., Inc.*, 545 F.App'x 444, 453 (6th Cir. 2013) (applying *Chevron* and giving deference to FCC declaratory ruling in affirming dismissal under Rule 12(b)(6)). Applying such deference in this case further dooms Count II to dismissal.

Indeed, the FCC has correctly recognized that "some administrative time may be necessary to process [internal DNC] requests." *In Re Rules & Regs. Implementing the TCPA,* 18 F.C.C. Rcd. 14014, 14069 (2003). Along those lines, while the TCPA's internal DNC regulations simply require businesses to "honor a residential subscriber's [DNC] request" within a "reasonable time" and not exceeding 30 days, the FCC has interpreted this rule to require businesses to honor DNC requests at least "within a ***few days or weeks***" as opposed to immediately. *Id.* ¶ 94 (emphasis added). According to Plaintiffs' own allegations, that rule was followed in this case.

Again, Plaintiffs allege that they received phone calls over a span of ***three days***.

*See, e.g.,* ECF No. 13 ¶¶ 32-48, PageID.96-98 (alleging Plaintiff Rice received calls on her cell phone between June 17-19, 2023); *id.* ¶¶ 66-75, PageID.100-101 (alleging Plaintiff Miller received calls on her cell phone between June 14-16, 2023).[2] Thus, any additional calls the Plaintiffs may have received after asking to be placed on the caller's internal DNC list occurred ***well within*** the 30-day "reasonable" time frame expressly permitted under the TCPA's internal DNC regulations, and certainly within (and in fact ***less*** than) "a few days or weeks" of their alleged DNC requests, which the FCC has interpreted as a "reasonable" time frame.[3] This Court must give substantial deference to the FCC's interpretation of the TCPA's regulations when ruling here and, in particular, what constitutes a "reasonable time" to honor an internal DNC request. *See, e.g., Keating v. Peterson's Nelnet, LLC*, 615 F.App'x 365, 370 (6th Cir. 2015) ("[W]e must defer to the reasonable interpretation of the [TCPA] offered by the FCC in its 2003 guidance."); *see also Leyse*, 545 F.App'x at 453; *Shalala*, 205 F.3d at 943. Under the FCC's interpretive authority cited above, MortgagePros complied with the

[2] While Rice also alleges additional calls to her <u>landline</u> phone number on June 21, 2023 after she purportedly asked for calls to her <u>cell phone</u> number to cease (*see* ECF No. 13, ¶ 48, PageID.98), she does not allege she ever made a DNC request in relation to her landline number; thus, these allegations do not support her internal DNC claim either. *See, e.g., Perrong v. S. Bay Energy Corp.,* 2021 WL 1387506, at *3 (E.D. Pa. Apr. 13, 2021) (plaintiff did not allege an internal DNC violation where he did not allege he asked for the subject number to be placed on caller's internal DNC list).

[3] Plaintiffs may argue that whether their DNC requests were timely honored cannot be decided at the pleadings stage, but courts have done so. *See Orsatti v. Quicken Loans, Inc.,* 2016 WL 7650574, at *7 (C.D. Cal. Sept. 12, 2016) (holding short delay in honoring internal DNC request, which was honored within the 30-day time maximum frame afforded, was reasonable and dismissing under Rule 12(b)(6)).

internal DNC regulations; thus, Plaintiffs' internal DNC claims fail as a matter of law.

Moreover, Plaintiffs also do not claim to have received any further calls from MortgagePros since the date of the last alleged call in the FAC in June 2023, or up to the point they filled their original complaint in July 2023. *See* ECF No. 1. As such, the only plausible inference to be drawn here is that ***MortgagePros had indeed implemented internal procedures prior to initiating the alleged violative calls, and honored Plaintiffs' DNC request within a reasonable time***, in accordance with the internal DNC regulations as interpreted by the FCC and applicable law. In other words, Plaintiffs allegations, at most, show they received calls over three days, and that their internal DNC requests were promptly honored, which does not remotely support an inference that MortgagePros lacked any internal DNC procedures. Therefore, Count II of the FAC should be dismissed under Rule 12(b)(6) on this additional basis . *See also Orsatti*, 2016 WL 7650574, at *7 (granting Rule 12(b)(6) motion where only other alleged call was within 30-day safe harbor under the statute).

## IV. ALTERNATIVELY, THE COURT SHOULD STRIKE CERTAIN IMPROPER ALLEGATIONS UNDER RULES 12(F) AND 23.

Should the Court decide not to dismiss in whole or in part, it should nevertheless strike certain plainly defective allegations under Rules 12(f) and/or 23.

### A. Paragraphs 17-20 are Immaterial, Impertinent, Scandalous, and Unduly Prejudicial and Should be Stricken Accordingly.

Under Rule 12(f), this Court "may strike from a pleading … any redundant,

immaterial, impertinent, or scandalous matter." "Immaterial" matter "ha[s] no essential or important relationship to the claim," whereas "impertinent" matter consists of statements that "do not pertain, and are not necessary, to the issues in question." *U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, 2007 WL 1026421, at *11 (S.D. Ohio Mar. 29, 2007). Here, Plaintiffs' FAC still contains immaterial, impertinent and scandalous allegations relating to online claims by unidentified parties having nothing to do with ***this*** case. *See* ECF No. 13, ¶¶ 17-20, PageID.92-95 (and footnotes thereto). Those improper and immaterial allegations should be stricken.

Federal courts, in the TCPA context and others, have recognized that "'[s]uperfluous historical allegations are a proper subject of a [Rule 12(f)] motion to strike.'" *Hicks v. Alarm.com Inc.*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 8, 2020) (quoting *Woo v. Home Loan Group, L.P.*, 2007 WL 6624925, at *5 (S.D. Cal. Jul. 27, 2007) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994))); *see also Gallegos v. Roman Catholic Archbishop of San Francisco*, 2016 WL 3162203, at *5 (N.D. Cal. June 7, 2016) (striking irrelevant allegations "involving a different plaintiff, and different underlying events"). The same is true for allegations about complaints filed in other cases or, as particularly relevant here, online "complaints" posted anonymously by third parties. *See, e.g., Hicks,* 2020 WL 9261758, at *5-6 (striking similar internet allegations in a case brought by the same counsel representing Plaintiffs here under

Rule 12(f)); *see also In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013) (citing *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009)); *Maine State Retirement Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *20-21 (C.D. Cal. May 5, 2011); *Conde v. Sensa*, 259 F. Supp. 3d 1064, 1071 (S.D. Cal. 2017); *Wiseberg v. Toyota Motor Corp.*, 2012 WL 1108542, at *12-13 (D.N.J. Mar. 30, 2012), *on reconsideration in part*, 2012 WL 12910267 (Aug. 17, 2012)). This Court should rule similarly in this case.

In this case, paragraphs 17 through 20 of the FAC (and the footnotes thereto) contain numerous improper allegations that should be stricken in their entirety under Rule 12(f). These allegations refer to anonymous posts on third party websites that Plaintiffs suggest are reflective of "cold calls" to consumers and "complaints" regarding "unsolicited" calls from MortgagePros. Yet, nothing in those "complaints" suggests MortgagePros is liable for the purported calls at issue ***here***. *See Hicks,* 2020 WL 9261758, at *6 (noting that such allegations "offer attenuated information that does little to support Plaintiff's claims"); *see also Fisher v. Alarm.com Holdings, Inc.*, 2018 WL 5717579, at *3 (N.D. Ill. Nov. 1, 2018) (stating that allegations involving defendant's alleged conduct in an unrelated case did nothing to support an inference that defendant was vicariously liable in the case at bar). Thus, Plaintiffs' vague and unsubstantiated internet complaints regarding "cold calls" or "unsolicited" telemarketing calls to others are irrelevant, immaterial, have no bearing on ***Plaintiffs***

or ***this*** case, and only serve to unduly prejudice MortgagePros. *Id*. Thus, if the Court does not dismiss, the Court should at least strike these immaterial, impertinent, superfluous, and prejudicial "historical allegations" from the FAC under Rule 12(f).

### B. Plaintiffs' Faulty Proposed Class Definitions and Class Related Allegations Should Be Stricken Pursuant to Rules 12(f) and 23.

The Court should also strike Plaintiffs' faulty proposed class definitions (*see* ECF No. 13, ¶ 82, PageID.103) and all other class-related allegations in the FAC under Rules 12(f) and 23 because (1) Miller lacks standing and thus cannot serve as a class representative; and (2) common questions of law and fact do not predominate, and individualized inquiries will be required, based on the pled allegations.

In this Circuit, class allegations may be properly stricken at the pleadings stage prior to discovery pursuant to Rule 12(f) where, as here, "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met" under Rule 23. *Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (quoting *Loreto v. Procter & Gamble Co.*, 2013 WL 6055401, at *2 (S.D. Ohio Nov. 15, 2013)); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming judgment striking class allegations and dismissing complaint where discovery would not alter the central defect in the class claim); *Eldridge v. Cabela's Inc.*, 2017 WL 4364205, at *10 (W.D. Ky. Sept. 29, 2017) (striking class definition in TCPA case at the pleadings stage).

Moreover, it is also well established that Rule 12(f) motions such as this one

serve to "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Glazer v. Reimer L. Co.*, 2019 WL 651599, at *2 (N.D. Ohio Feb. 15, 2019) (quoting *Kennedy v. Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)). "Rule 23(c)(1)(A) says that the district court should decide whether to certify a class "[a]t an early practicable time." *Pilgrim*, 660 F.3d at 949. Thus, federal courts have widely recognized that permitting a facially uncertifiable class to proceed to discovery would place an undue burden and expense upon the parties and the court. *See, e.g., Yagman v. Allianz Ins.*, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015) (striking class allegations where allowing untenable class claims to proceed past the pleadings stage "would inject significant uncertainty as to the scope of discovery and other pre-trial proceedings") (citation omitted). This Court, if it does not dismiss, should follow this sound logic authorities here.

In this case, Plaintiffs plead two proposed class definitions, one for each Count. *See* ECF No. 13, ¶ 82, PageID.103. The proposed "Do Not Call Registry Class" definition (which corresponds to Count I) relates only to Plaintiff Miller who, for the reasons stated above, lacks Article III standing for her claims. *See* discussion at pp. 7-10, *supra*. Therefore, because Miller plainly is not a member of the class that she purports to represent, the proposed "Do Not Call Registry Class" definition (which would be superfluous once Miller is dismissed in any event, since Rice is not asserting a National DNC Registry violation) should be stricken on this basis alone. *See, e.g.,*

*Chapman v. CKE Restaurants Holdings, Inc.*, 2020 WL 1230130, at *7 (E.D.N.C. Mar. 12, 2020) (holding that, where a named plaintiff in a class action lacks Article III standing for her individual claims, she also "lacks standing to pursue a nationwide class action" for those claims); *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("We have repeatedly held that a class representative must be part of the class[.]"); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) ("To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class[.]"); *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1651 (2019) ("A named plaintiff must be a member of the class she seeks to represent.").

Further, the allegations in the FAC show Plaintiffs cannot meet the certification requirement for either proposed class definition under Rule 23(b)(3), which requires that "questions of law or fact common to class members must predominate over any questions affecting only individual members[.]" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017), *as corrected* (Sept. 1, 2017). "A common issue of fact or law does not exist unless 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Sherrod v. Enigma Software Grp. USA, LLC*, 2016 WL 25979, at *6 (S.D. Ohio Jan. 4, 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). In other words, the predominance requirement under 23(b)(3) is not met

where the issues "are inapplicable to the class as a whole because, varying from member to member, the issues are not subject to generalized proof" in a single case. *Stalker v. MBS Direct, LLC*, 2012 WL 6642518, at *8 (E.D. Mich. Dec. 20, 2012).

Along these lines, courts have consistently denied class certification in TCPA cases (particularly in internal DNC list/revocation cases like this one) where, as here, individualized consent inquiries predominate. *See, e.g., Sandusky*, 863 F.3d at 469 (affirming denial of class certification where putative class included current customers who provided their fax numbers and identifying who had given the requisite consent would require individualized inquiries); *Sawyer v. KRS Glob. Biotech., Inc.,* 2018 WL 4214386, at *12 (S.D. Ohio Sept. 5, 2018) (denying certification, holding: "There is simply no way for Plaintiff to get around the thorny issue of proving, on a class-wide basis, whether others who received the [fax] had consented to receipt of such materials"); *see also Trenz v. On-Line Administrators, Inc.*, 2020 WL 5823565, at *8 (C.D. Cal. Aug. 10, 2020) (decertifying TCPA class and noting "[t]he necessity of individual inquiries is a ***clear bar*** to class certification in TCPA matters") (citing various cases, emphasis added)). Courts have also routinely stricken class allegations at the pleadings stage in TCPA cases for this reason. *See, e.g.*, *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016); *Eldridge*, 2017 WL 4364205, at *7-11; *Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017); *Balthazor v. Cent. Credit Servs., Inc.,* 2012 WL 6725872, at *4 (S.D. Fla.

Dec. 27, 2012) . *See also Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) ("[T]he predominant issue of fact [in a TCPA case] is undoubtedly one of ***individual*** consent") (emphasis in original); *Baisden v. Credit Adjusts., Inc.*, 813 F.3d 338, 343 (6th Cir. 2016) ("[T]he context of the consent provided is critical" in a TCPA case.). This Court should reach the same conclusion in the present case.

Here, it is apparent from the face of the FAC that common questions of law and fact do not predominate and that various individualized inquiries would be required. In this regard, Plaintiffs seeks to represent two classes of persons for whom MortgagePros purportedly called on their "residential" numbers "for substantially the same reason Defendant called Plaintiffs" including "including at least once after the consumer had communicated their wish to not receive any further calls from the Defendant." ECF No. 13, ¶ 82, PageID.103. Yet, the "reason" MortgagePros allegedly made calls or whether or why MortgagePros allegedly continued to place telemarketing calls after a request to stop calling cannot be determined on a class wide basis, as individualized issues will <u>inevitably</u> predominate. *See, e.g., Eldridge*, 2017 WL 4364205, at *9 (stating caselaw "favors striking" revocation classes in TCPA cases) (collecting cases)). Indeed, though someone who consented can later "request" that the caller "stop calling"—*i.e.*, revoke consent—under the TCPA, they "***cannot use ambiguous statements***" and "must ***clearly*** revoke consent." *Barnett v. Bank of Am., N.A.*, 2021 WL 2187950, at *5 (W.D.N.C. May 28, 2021) (emphasis added).

Thus, the critical legal and factual issues of consent and revocation of consent are inextricably intertwined with Plaintiffs' proposed class definitions as pled, and individualized determinations on those key issues would undoubtedly be needed here.

Individualized inquires will also be required to determine whether each class member utilized their number for "residential" purposes. *See, e.g., Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 135 (N.D. Tex. 2020) (holding questions such as "residential" status "require 'evidence that varies from member to member'").[4] This too is a fact intensive inquiry, as the term "residential" is not defined in the statute; and courts have held that whether someone qualifies as a "residential subscriber" for a TCPA DNC claim generally depends on certain conditions, including whether the subject number "is the primary means of reaching the individual at their residence—that is, ***there is no other landline or phone at their residence which is instead the primary means of reaching them***" there. *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022) (emphasis added).

In sum, courts often deny class certification and/or strike class allegations in TCPA cases on predominance grounds where (as here) individualized determinations

[4] It is well-accepted that TCPA DNC claims can only be brought by "residential" subscribers (*i.e.,* the number called must actually be used for "residential" purposes); that a phone number is used for "personal" use or that it is "not associated with a business" is not enough. *See, e.g., Hicks*, 2020 WL 9261758, at *5; *Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020); *Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *4 (W.D. Wash. Mar. 27, 2023); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023).

of "consent," "revocation" or "residential" status would be required—which are all critical fact intensive inquiries in TCPA cases such as this one. *See, e.g., Eldridge, Cholly*, and *Hirsch*, *supra*. This Court should join them, and both of Plaintiffs' proposed class definitions should also be stricken on predominance grounds, as well.

And with Plaintiffs' faulty class definitions properly stricken for the reasons above, all remaining "class"-related allegations (*see, e.g.,* ECF No. 13, ¶¶ 83-87, PageID.103-106) are superfluous and, thus, are properly stricken as well. *See Flores v. City of Cal. City*, 2019 WL 1934016, at *6 (E.D. Cal. May 1, 2019) (striking "any reference to a class, Rule 23, or a class action" after dismissal of class claims).

## CONCLUSION

For these reasons, the FAC should be dismissed ***with prejudice***[5] and/or stricken.

Dated: November 1, 2023

Respectfully submitted,

By: /s/ A. Paul Heeringa

**MANATT, PHELPS & PHILLIPS, LLP**

*Counsel for Defendant*

[5] It is proper to dismiss a complaint with prejudice where, as here, a plaintiff already had a chance to amend and the amendments failed to cure the complaint's deficiencies. *See, e.g., United States v. Doyle,* 2022 WL 1186182, at *15 (S.D. Ohio Apr. 21, 2022). *See also Begala v. PNC Bank, Ohio, Nat'l Ass'n,* 214 F.3d 776, 784 (6th Cir. 2000) (agreeing that "Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies."). Miller's lack of standing also cannot be cured by amendment.

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 1, 2023, I filed the foregoing electronically through the Court's CM/ECF system, which caused the following parties or counsel to be served by electronic means on all parties and their respective counsel of record.

*s/ A. Paul Heeringa*

A. Paul Heeringa